| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| Southern District of New York |
| Case number (*If known*): _____ Chapter 15 |

☐ Check if this is an
amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

**1. Debtor's name**    B.C.I. Finances Pty Limited (in Liquidation)

**2. Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)    __ __ – __ __ __ __ __ __ __

☑ Other  ACN 055 988 531    . Describe identifier  AU corporation number   .

**For individual debtors:**

☐ Social Security number:   xxx – xx– ___ ___ ___ ___

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ___ ___ ___ ___

☐ Other _____ . Describe identifier _____ .

**3. Name of foreign representative(s)**    John Sheahan and Ian Russell Lock

**4. Foreign proceeding in which appointment of the foreign representative(s) occurred**    John Sheahan and Ian Lock v. A. Binetter et al., SAD143/2014 (Fed. Ct. of AU)

**5. Nature of the foreign proceeding**

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6. Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

**7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)
☑ Yes

| Debtor | B.C.I. Finances Pty Limited (in Liquidation) | | Case number (if known) |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| 8. **Others entitled to notice** | Attach a list containing the names and addresses of: | |
| | (i) | all persons or bodies authorized to administer foreign proceedings of the debtor, |
| | (ii) | all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and |
| | (iii) | all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code. |

9. **Addresses**

**Country where the debtor has the center of its main interests:**

Australia

**Debtor's registered office:**

26 Flinders Street
Number         Street

P.O. Box

Adelaide, South Australia                    05000
City              State/Province/Region   ZIP/Postal Code

Australia
Country

**Individual debtor's habitual residence:**

Number         Street

P.O. Box

City              State/Province/Region   ZIP/Postal Code

Country

**Address of foreign representative(s):**

26 Flinders Street
Number         Street

P.O. Box

Adelaide, South Australia                    05000
City              State/Province/Region   ZIP/Postal Code

Australia
Country

10. **Debtor's website** (URL)

_____

11. **Type of debtor**

*Check one:*

❑  Non-individual (*check one*):

    ☑  Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ❑  Partnership

    ❑  Other. Specify: _____

❑  Individual

| Debtor | B.C.I. Finances Pty Limited (in Liquidation) | Case number (if known) |
| | Name | |

| **12. Why is venue proper in *this district*?** | *Check one:* |
| | ☐ Debtor's principal place of business or principal assets in the United States are in this district. |
| | ☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district: |
| | _____. |
| | ☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because: |
| | witnesses and potential assets are in this district . |

| **13. Signature of foreign representative(s)** | I request relief in accordance with chapter 15 of title 11, United States Code. |
| | I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition. |
| | I have examined the information in this petition and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct, |
| | ✗ _____    JOHN SHEAHAN |
| | Signature of foreign representative        Printed name |
| | Executed on  05 08 2017 |
| | MM / DD / YYYY |
| | ✗ _____    IAN LOCK |
| | Signature of foreign representative        Printed name |
| | Executed on  05 08 2017 |
| | MM / DD / YYYY |

| **14. Signature of attorney** | ✗ _____    Date _____ |
| | Signature of Attorney for foreign representative        MM / DD / YYYY |
| | _____ |
| | Printed name |
| | _____ |
| | Firm name |
| | _____ |
| | Number        Street |
| | _____ |
| | City        State        ZIP Code |
| | _____ |
| | Contact phone        Email address |
| | _____ |
| | Bar number        State |

Robert N. H. Christmas, Esq.
NIXON PEABODY LLP
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000
Facsimile: (212) 940-3111

*Counsel for John Sheahan and Ian Russell Lock as Liquidators*
*of B.C.I. Finances Pty Limited (in Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 15 |
| | : |
| B.C.I. FINANCES PTY LIMITED (In Liquidation), | : Case No. |
| | : |
| Debtor in a Foreign Proceeding. | : |
| | : |
| | : |

-----------------------------------------------------------------------x

### ATTACHMENTS TO PETITION

1.      A copy of the order of the Federal Court of Australia dated August 27, 2014, appointing Ian Lock and John Sheahan as Joint and Several Liquidators of the Debtor (the "Liquidators"), is attached hereto as Annexure A.

2.      A copy of the document filed with the Australian Securities and Investments Commission ("ASIC") on October 31, 2014 confirming the appointment of the Liquidators is attached hereto as Annexure B.

3.      A copy of the minutes of the second meeting of creditors of the Debtor held on April 23, 2014, at which a Resolution passed appointing Messrs. Lock and Sheahan previously as joint and several liquidators of the Debtor pursuant to section 439C of the Corporations Act, is attached as Annexure C.

4.      A copy of the Debtor's Certificate of Registration from ASIC is attached hereto as Annexure D.

4822-2883-7407.1

# Annexure A

## Order Entered

No: SAD143/2014

Federal Court of Australia

District Registry: South Australia

Division: General

**IN THE MATTER OF:    B.C.I. FINANCES PTY LTD (IN LIQUIDATION)
ACN 055 988 531**

**JOHN SHEAHAN AND IAN RUSSELL LOCK AS JOINT AND SEVERAL
LIQUIDATORS OF B.C.I. FINANCES PTY LTD (IN LIQUIDATION)**
Plaintiffs

**ANDREW JOHN BINETTER** and others/another named in the schedule
Other

### ORDER

| | |
|---|---|
| **REGISTRAR:** | GRANT |
| **DATE OF ORDER:** | 27 AUGUST 2014 |
| **WHERE MADE:** | ADELAIDE |

**THE COURT ORDERS THAT:**

1. B.C.I Finances Pty Limited (in liquidation) be wound up in insolvency pursuant to section 459A of the *Corporations Act 2001* (Cth) ('**the Act**').

2. John Sheahan and Ian Russell Lock be appointed as the joint and several liquidators of the B.C.I Finances Pty Limited (in liquidation).

3. The Court dispense with the requirements of section 465A of the Act, Rule 5.6(1) of the *Corporation Rules* and sections 470(2)(b) and 470(2)(c) of the Act pursuant to section 467(3)(b) of the Act.

4. Liberty to apply.


Date that entry is stamped:    27 AUGUST 2014

DEPUTY DISTRICT REGISTRAR

Subsection 35A (5) of the *Federal Court of Australia Act 1976* (the *Act*) provides that a party to proceedings in which a Registrar has exercised any of the powers of the Court under subsection 35A (1) of the Act may, within the time prescribed by the Rules of Court, or within any further time allowed in accordance with the Rules of Court, apply to the Court to review that exercise of power.

Rule 3.11 provides that a party may apply to the Court under subsection 35A (5) of the Act for review of the exercise of a power of the Court by a Registrar and that any application must be made within 21 days after the day on which the power was exercised. A party seeking a review can apply to the Court to dispense with any requirement of the Rules (Rule1.34).

**Schedule**

No: SAD143/2014

Federal Court Of Australia

District Registry: South Australia

Division: General

**CORPORATIONS ACTION filed by JOHN SHEAHAN AND IAN RUSSELL LOCK
AS JOINT AND SEVERAL LIQUIDATORS OF B.C.I. FINANCES PTY LTD (IN
LIQUIDATION)(P)**

| | |
|---|---|
| Other: | BINQLD FINANCES PTY LIMITED |
| Other: | LIGON 158 PTY LIMITED |
| Other: | ERMA NOMINEES PTY LIMITED |

# Annexure B

**Australian Securities &
Investments Commission**

**Form 505**
Corporations Act 2001
415(1), 427(2), 427(4), 450A(1)(a),
537(1) & (2)
Corporations Regulations 2001
5.3A.03

# Notification of appointment or cessation
# of an external administrator

If there is insufficient space in any section of the form, you may photocopy the relevant page(s) and submit as part of this lodgement

| Lodgement details | Who should ASIC contact if there is a query about this form? |
|---|---|
| An image of this form will be available as part of the public register. | ASIC registered agent number (if applicable) |
| | Firm/organisation |
| | SHERMAN LOUL PARTNERS |
| | Contact name/position description · Telephone number (during business hours) |
| | MICHAEL NELSON · (08) 82310077 |
| | Email address (optional) |
| | Postal address |
| | GPO Box 1173 |
| | Suburb/City · State/Territory · Postcode |
| | ADELAIDE · SA · 5001 |

## 1 Company to which the administrator was appointed

Company name
BCI FINANCES PTY LTD

ACN/ABN/ARBN
055 988 531

## 2 Company industry type

Tick one box.

Indicate the main industry in which the company was involved.

| | |
|---|---|
| ☐ Accommodation and Food Services | ☒ Financial and Insurance Services – Other Financial services |
| ☐ Administrative and Support Services | ☐ Health Care and Social Assistance |
| ☐ Agriculture, Forestry and Fishing | ☐ Information Media and Telecommunications |
| ☐ Arts and Recreation Services | ☐ Manufacturing |
| ☐ Construction | ☐ Mining |
| ☐ Education and Training | ☐ Other (Business and Personal) Services |
| ☐ Electricity, Gas Water and Waste Services | ☐ Professional, Scientific and Technical Services |
| ☐ Financial and Insurance Services - Credit Provider | ☐ Public Administration and Safety |
| ☐ Financial and Insurance Services - Deposit Taking Institutions | ☐ Rental, Hiring and Real Estate Services |
| ☐ Financial and Insurance Services – Insurance | ☐ Retail Trade |
| ☐ Financial and Insurance Services – Managed Investments | ☐ Transport, Postal and Warehousing |
| ☐ Financial and Insurance Services – Superannuation | ☐ Wholesale Trade |

# 3 Details of the person(s)/firm appointed

Liquidator registration number

5735

| Family name | Given name |
|---|---|
| SHEAHAN | JOHN |

Firm name (if applicable)

SHEAHAN LOCK PARTNERS

The address must be completed.

Office, unit, level

LEVEL 2

Street number and street name

234 GEORGE STREET

| Suburb/City | State/Territory | Postcode |
|---|---|---|
| SYDNEY | NSW | 2000 |

Country (if not Australia)

**Type of appointment**  ☐ appointed singly  ☐ appointed jointly  ☒ appointed jointly and severally

Liquidator registration number

192831

| Family name | Given name |
|---|---|
| LOCK | IAN |

Firm name (if applicable)

SHEAHAN LOCK PARTNERS

The address must be completed.

Office, unit, level

LEVEL 8

Street number and street name

26 FLINDERS STREET

| Suburb/City | State/Territory | Postcode |
|---|---|---|
| ADELAIDE | SA | 5000 |

Country (if not Australia)

**Type of appointment**  ☐ appointed singly  ☐ appointed jointly  ☒ appointed jointly and severally

# 4 Details of appointment

Date must be provided

Date of appointment

| 2 | 7 | / | 0 | 8 | / | 1 | 4 |
|---|---|---|---|---|---|---|---|
| [D | D] | | [M | M] | | [Y | Y] |

|  | | ASIC internal form code |
|---|---|---|
| **Type of administrator** Tick one box | Administrator | 505U |
| | Provisional liquidator | 505S |
| | ☑ Liquidator of Court liquidation | 505G |
| | Liquidator of members' voluntary liquidation | 505H |
| | Liquidator of creditors' voluntary liquidation | 505J |
| | Liquidator of creditors' voluntary liquidation appointed by ASIC under Part 5.4C | 505JA |
| | Receiver of the property described in the Schedule of property to this form | 505A |
| | Receiver and manager of the property described in the Schedule of property to this form | 505B |
| | Managing controller (other than receiver and manager) of the property described in the Schedule of property to this form | 505Q |
| | Controller (other than receiver, receiver and manager or managing controller) of the property described in the Schedule of property to this form | 505T |
| | Deed administrator | 505V |
| | Scheme administrator under Part 5.1 | 505C |

**Method of appointment**

If appointment by Court order, tick box to indicate the Court and provide details

Appointment by Court order

☒ Federal Court of Australia    State or territory registry
SA

☐ Family Court of Australia    State or territory registry

☐ Supreme Court    State or territory

Date of obtaining order

| 2 | 7 | / | 0 | 8 | / | 1 | 4 |
|---|---|---|---|---|---|---|---|
| [D | D] | | [M | M] | | [Y | Y] |

Proceeding-matter number
143

Year
2014

## 4 Continued... **Details of appointment**

Complete both dates.

☐ **Appointment by instrument**

Date of appointment                 AND        Date of instrument

☐☐ / ☐☐ / ☐☐                    ☐☐ / ☐☐ / ☐☐
[D   D]  [M   M]  [Y   Y]                      [D   D]  [M   M]  [Y   Y]

Description of instrument

_____

_____

☐ Instrument registered in the Personal Property Securities Register
Security interest number

[_____]

☐ Instrument registered in other register
Please specify details

[_____]

☐ Instrument not registered
Name of appointer

[_____]

☐ **Appointment other than by Court or instrument**

Date of appointment

☐☐ / ☐☐ / ☐☐
[D   D]  [M   M]  [Y   Y]

☐ **Appointment by company by writing under its common seal**

Date of appointment

☐☐ / ☐☐ / ☐☐
[D   D]  [M   M]  [Y   Y]

☐ **Appointment by liquidator or provisional liquidator**

Date of appointment

☐☐ / ☐☐ / ☐☐
[D   D]  [M   M]  [Y   Y]

## 5 Ceasing, resignation or removal

Date must be provided.

Date of cessation, resignation or removal

☐☐ / ☐☐ / ☐☐
[D   D]  [M   M]  [Y   Y]

| | ASIC internal form code |
|---|---|
| ☐ Cessation, resignation or removal of administrator | 505Y |
| ☐ Resignation or removal of liquidator (including Court–appointed liquidator) | 505R |
| ☐ Resignation or removal of provisional liquidator | 505R |
| ☐ Cessation of receiver | 505K |
| ☐ Cessation of receiver and manager | 505L |
| ☐ Cessation of managing controller (other than receiver and manager) | 505W |
| ☐ Cessation of controller (other than receiver, receiver and manager or managing controller) | 505X |
| ☐ Cessation, resignation or removal of deed administrator | 505Z |
| ☐ Cessation of scheme administrator under Part 5.1 | 505M |

If a controller, show details of method of appointment in Section 4.

# 6 Schedule of property

(If insufficient space) Further details are enclosed in the annexure marked ( ) of ( ) pages.

# 7 Additional ASIC information requirements

**Ceasing, Resignation or Removal**

Please note that for ASIC to form an opinion whether it may receive or register this document under s1274(9), the following information is required in relation to the ceasing, resignation or removal of an external administrator.

If this notice is lodged to notify the ceasing, resignation, removal of an external administrator or where an administrator has been appointed to replace a currently appointed person or persons, please show below the details of the person or persons who have resigned etc. If joint administrators, show only the names of the person or persons who have resigned etc.

Name

Name

Name

If one of the following administrators, please tick appropriate box and complete date of appointment of the person(s) who have ceased etc.

Date of appointment

[ ][ ] / [ ][ ] / [ ][ ]
[D D] [M M] [Y Y]

☐ Receiver

☐ Receiver and manager

☐ Managing controller (other than receiver and manager)

☐ Controller (other than receiver, receiver and manager or managing controller)

Please note that failure to supply this information may result in the rejection of this document.

## Signature

This form must be signed by the external administrator.

Name

IAN LOCK

Capacity

JOINT + SEVERAL LIQUIDATOR

Signature

Date signed

[2][9] / [1][0] / [1][4]
[D D] [M M] [Y Y]

## Lodgement

Send completed and signed forms to:
Australian Securities and Investments Commission,
PO Box 4000, Gippsland Mail Centre VIC 3841.

Or lodge the form online by visiting the ASIC website
www.asic.gov.au

For more information
Web          www.asic.gov.au
Need help?   www.asic.gov.au/question
Telephone    1300 300 630

ASIC Form 505                    7 October 2013                    Page 5 of 5

# Annexure C

**MINUTES OF THE RESUMED SECOND MEETING OF CREDITORS OF B.C.I. FINANCES PTY LIMITED (ADMINISTRATORS APPOINTED) A.C.N. 055 988 531 HELD AT THE OFFICES OF BRI FERRIER, LEVEL 30, AUSTRALIA SQUARE, 264 GEORGE STREET, SYDNEY NSW 2000 ON 23 APRIL 2014 AT 9:00AM**

| | | |
|---|---|---|
| **PRESENT** | Antony Resnick | Chairperson and Joint and Several Administrator |
| | Andrew Cummins | BRI Ferrier |
| | Andrew Jo | BRI Ferrier |
| | Creditors and their Proxy-holders as recorded in the attached Attendance Register. | |

**CHAIRPERSON**  Antony Resnick, a Joint and Several Administrator of the Company opened the meeting and introduced himself. He advised that he would act as Chairperson of the meeting in accordance with Section 439B(1) of the Corporations Act 2001 and Regulation 5.6.17(1) of the Corporations Regulations.

**CONVENING OF MEETINGS**  The Chairperson noted that at the Second Meeting of creditors held on 9 April 2014, creditors resolved to adjourn the meeting to 23 April 2014 pursuant to Section 439B(2) of the Corporations Act 2001 ("the Act").

**QUORUM**  The Chairperson determined that a quorum was present in accordance with Regulation 5.6.16(2) of the Corporations Regulations.

**DECLARATION OF CONVENIENCE**  The Chairperson noted that in accordance with Regulation 5.6.14, that the meeting was being held at a date, time and place convenient to the majority of persons entitled to receive notice of the meeting.

**ADJUDICATION AND PROXIES**  The Chairperson tabled the Attendance Register and referred to the Proxies and Proofs of Debt lodged in respect of the Meeting.

He admitted the creditors present for the amounts of their debts as recorded in the Attendance Register, noting that this admission was only for voting purpose at the Meetings, and not for dividend. If a dividend was payable, further proof would be sought.

**PURPOSE OF MEETINGS**  The Chairperson reiterated that the main purpose of the Meetings was:

1. To consider and approve the remuneration of the Administrators.

2. If creditors resolve to wind up the Company:

    a. To consider the appointment of an alternate liquidator(s);

    b. To consider and approve the remuneration of the Liquidators; and

    c. To consider the destruction of the Companies books and records.

3. To consider the appointment of a Committee of Inspection.

**RESOLUTIONS
PASSED**

At the Second Meeting of Creditors held on 9 April 2014, the Chairperson noted that the following resolutions were passed:

⊿ *"That the remuneration of the Joint and Several Voluntary Administrators, their partners and staff for the period 5 March 2014 to 31 March 2014, be calculated on a time basis in accordance with the rates of charge as detailed in the Administrators' Remuneration Request Approval Report dated 31 March 2014, be fixed and approved at $42,267.00 plus GST, and that the Joint and Several Voluntary Administrators be authorised to draw that amount."*

⊿ *"That the remuneration of the Joint and Several Administrators, their partners and staff for the period 1 April 2014 to the conclusion of the administration, be calculated on a time basis in accordance with the rates of charge as detailed in the Administrators' Remuneration Request Approval Report dated 31 March 2014, and approved to a maximum amount of $21,210.00 plus GST, and that the Joint and Several Voluntary Administrators be authorised to draw that amount as and when incurred."*

⊿ *"That the Company be wound up"*

**RESOLUTIONS –
ADMINISTRATORS'
REMUNERATION**

The Chairperson discussed the Administrators' remuneration. He tabled the Remuneration Reports that had been provided to creditors as an Annexure of the S439A Report dated 1 April 2014. The Chairperson advised the meeting that additional remuneration was being sought for the period commencing 9 April 2014 and asked if creditors had any questions regarding the remuneration being sought for approval. None were forthcoming.

The Chairperson proposed the following resolution:

*"That the remuneration of the Joint and Several Voluntary Administrators, their partners and staff for the period 9 April 2014 to conclusion of the administration, be calculated on a time basis in accordance with the rates of charge as detailed in the Administrators' Remuneration Request Approval Report dated 31 March 2014, be fixed and approved at $16,842.50 plus GST, and that the Joint and Several Voluntary Administrators be authorised to draw that amount."*

The Chairperson declared the resolution carried on voices. It was noted that the Australian Taxation Office ("ATO") abstained from voting.

**OTHER MATTERS**

The Chairperson advised the meeting that Andrew Cummins of BRI Ferrier would be addressing the meeting in relation to other matters in relation to the Company.

Andrew Cummins of BRI Ferrier noted that at the meeting held on 9 April 2014,

the ATO nominated Max Donnelly and Robyn Duggan of Ferrier Hodgson as the alternate liquidators of the Company. On 15 April 2014, the Administrators received a correspondence from the ATO indicating that they had changed their views and decided that they would nominate John Sheahan and Ian Russell Lock of Sheahan Lock Partners ("SLP"). He advised the meeting that it would be appropriate if the ATO addressed the meeting and provide an explanation as to why they believe John Sheahan and Ian Russell Lock should be appointed as liquidators of the Company.

Alex Moreno, representing the ATO, advised that the ATO accounts for over 95% of the value of creditors of the Company and they are of the belief that the ATO is the only independent creditor of the Company. He continued to advise that the ATO would consider funding for SLP and believes that the appointment of SLP would benefit all creditors of the Company. Furthermore, the ATO would be voting against any insolvency practitioner who has been nominated by the related party creditors.

Kathleen Chau of the ATO advised that the ATO nominated SLP instead of Max Donnelly and Robyn Duggan because the ATO was addressing the concerns raised by the Administrators and the related party creditors in relation to the appointment of Max Donnelly and Robyn Duggan.

Andrew Cummins noted that at the meeting held on 9 April 2014, the ATO would consider funding for liquidators nominated by the ATO.

**Question**

Andrew Cummins asked the ATO whether the ATO's position had changed, from 'considering' to 'willing', in respect of the funding of a liquidator nominated by the ATO.

**Answer**

Alex Moreno advised that the ATO's position had not changed. Kathleen Chau added that the ATO will be recommending funding to a liquidator nominated by the ATO.

Andrew Cummins noted that the ATO previously advised that Max Donnelly had experience in dealing with Israeli banks and obtaining information from them.

**Question**

Andrew Cummins asked the ATO whether this was the case for SLP.

**Answer**

Kathleen Chau advised that in respect to SLP, her understanding was that SLP had extensive experience in investigating offshore transactions.

Andrew Cummins mentioned that it would have been helpful if either John

Sheahan or Ian Russell Lock were in attendance at the meeting so they may provide answers to questions the Administrators have in respect of this matter.

**Question**

Kathleen Chau asked if this would be an issue that a representative of SLP was not in attendance.

**Answer**

Andrew Cummins advised that it is conventional practice for a liquidator who is challenging the appointment of another liquidator to attend the meeting. For that reason, Mark Roufeil of PKF Lawler ("PKF") was in attendance to answer any questions creditors might have in relation to his potential appointment as liquidator of the Company. He continued to advise that it is a decision to be made by the ATO as to whether a representative of SLP should be in attendance.

He noted that it was previously advised that Max Donnelly was prepared to undertake the matter for an amount of $20,000.

**Question**

Andrew Cummins asked the ATO whether this was the same basis that SLP would be undertaking this matter.

**Answer**

Kathleen Chau advised that this was not the only basis.

Andrew Cummins continued to advise that he had noticed that SLP, in terms of their hourly rates of charge, were substantially higher than the incumbent Administrators, PKF and Max Donnelly's hourly rates of charge.

**Question**

Andrew Cummins asked the ATO whether they had any comments in respect of his observation.

**Answer**

Kathleen Chau advised the ATO had no comments.

Andrew Cummins stated that the code of professional practice ("COPP") under which most insolvency practitioners in Australia operate requires that an alternate liquidator provide a number of documents to the creditors at a meeting of creditors. One document which should be provided is a Declaration of Independence, Relevant Relationships and Indemnities ("DIRRI"). He advised that the Administrators have not received a DIRRI and it is a required practice to table a DIRRI at the meeting.

Kathleen Chau asked Andrew Cummins to repeat what he just stated.

Andrew Cummins advised that the COPP at paragraph 11.7.3 addresses the conduct at a creditors meeting. It specifically states that an alternate liquidator must provide the meeting of creditors with the following:

1. a DIRRI;

2. the basis on which they propose to be paid as liquidators; and

3. details of any relationships with creditors.

He continued to advise that the Administrators had received from the ATO, details of SLP's charge out rates but had not received a DIRRI and details of their relationships with creditors.

The Chairperson advised that the Administrators had received a consent to act from SLP.

**Question**

The Chairperson asked the ATO whether they had any comments in relation to the above issue.

**Answer**

Kathleen Chau advised that she was surprised that SLP had not provided a DIRRI.

The Chairperson advised the ATO that the Administrators were in a difficult position to continue the meeting without the DIRRI.

Kathleen Chau, on behalf of the ATO, requested a short adjournment.

The meeting was adjourned at 9:30am and resumed at 9:32am.

Kathleen Chau advised the meeting that she was checking her emails and that her director advised her that he had seen the DIRRI and that they were double checking.

The meeting was adjourned at 9:33am and resumed at 9:35am.

Kathleen Chau apologised to the meeting for the delay. She advised that Alex Moreno was still checking whether or not they had received the DIRRI from SLP.

**Question**

Kathleen Chau asked whether it was possible to adjourn the meeting again.

**Answer**

The Chairperson consented to the adjournment.

The meeting was adjourned at 9:36am and resumed at 9:37am.

Kathleen Chau advised that she was able to get in contact with SLP and that the ATO would require a five minute adjournment of the meeting.

The Chairperson agreed to the adjournment.

**Question**

Andrew Cummins asked Kathleen Chau how SLP were going to send the DIRRI.

**Question**

Alex Moreno asked whether the Administrators would like to receive the DIRRI via fax or email.

**Answer**

Andrew Cummins advised the ATO to send the DIRRI to Andrew Jo of BRI Ferrier.

The meeting was adjourned at 9:38am and resumed at 9:56am.

The Chairperson advised that he had received the DIRRI from SLP via email.

**Question**

In respect of the DIRRI received from SLP, Andrew Cummins asked the ATO to clarify whether the DIRRI had been received by Aris Zafiriou of the ATO prior to the meeting.

**Answer**

Kathleen Chau advised that she was unsure. She contacted Aris Zafiriou and he had informed her that he thought he had seen the DIRRI.

Andrew Cummins noted that the DIRRI was dated 23 April 2014 which is the date of the meeting currently taking place.

Kathleen Chau advised that Aris Zafiriou could have been mistaken and she was uncertain. Furthermore, she advised that Mr Sheahan of SLP could make himself available to attend the meeting via teleconference to answer any questions that the Administrators might have.

The Chairperson informed Kathleen Chau that Mr Sheahan may attend the meeting.

Ian Lock of SLP attended the meeting at 9:53am. Ian Lock advised that John Sheahan will be attending the meeting shortly.

The Chairperson advised Ian Lock that the meeting had been adjourned several times and that he had some issues which he would like to address at the

meeting.

John Sheahan attended the meeting at 9:54am.

The Chairperson noted that SLP practices in Adelaide and that one of the issues the Administrators had was that the offices of SLP were located in Adelaide, whereas the Company and the majority of parties involved with the Company were located in Sydney.

**Question**

The Chairperson asked whether there would be any cost implications to creditors for expenses incurred in relation to travelling.

**Answer**

John Sheahan advised that he is a resident of Sydney and that SLP has an office in Sydney. He advised that there would not be any additional costs to creditors.

The Chairperson noted that the hourly rates of charge of SLP were substantially greater than the other nominees who were being considered as the alternative liquidator of the Company.

The Chairperson advised that Robert Reinoso, who represents the other 3 creditors with a value of over $600,000 had some issues to be raised at the meeting.

**Question**

Robert Reinoso referred to the type of work carried out internationally by SLP. He asked whether SLP have had previous dealings with Israeli banks and the privacy laws that arise in that particular jurisdiction.

**Answer**

John Sheahan advised that he was not familiar with Israeli banks but had previously dealt with Swiss banks.

Robert Reinoso informed John Sheahan that the purpose of his question was that the matter of B.C.I. Finances Pty Ltd involved transactions that were subject to investigations of the Administrators which involved Israeli banks and that he wanted a better understanding as to the background and experience SLP had in dealing with Israeli banks and the privacy laws in that country

**Answer**

John Sheahan advised that SLP works closely with a number of Australian law firms, particularly Clayton Utz, and that they would be working with their international affiliates on matters such as B.C.I. Finances Pty Ltd. He continued to say that every jurisdiction is different and that he would be obtaining legal

advice.

Robert Reinoso commented that one of the bases of the nomination of SLP is based upon their experience. He advised that he had some concerns with SLP's fee structure compared to PKF. There are noticeable differences in terms of rates of hourly charge whereby SLP's rates of charge are between $100 to $200 per hour greater than PKF. The reason for his concern is because the ATO had asserted that it would be beneficial for creditors to have SLP appointed as liquidators of the Company and given the complexity of the manner, the differences in the rate of hourly charge are going to be significant considering the number of hours that will be spent in conducting the liquidation. He emphasised that his concerns were on behalf of the creditors he represents.

John Sheahan noted that it was his understanding that the ATO accounts for approximately 95% in value of creditors of the Company. Before any fees are paid, they had to be approved by creditors or a committee of inspection. He advised that SLP does not seek indemnities and that SLP only gets paid from any recoveries. He continued to advise that the rates of hourly charge was not a relevant issue in this matter.

Robert Reinoso acknowledged John Sheahan's comments, however, he wanted to note for the purposes of the meeting that he had some concern with the hourly rates of charge.

John Sheahan commented that SLP tries to spend as little time possible on a matter so that the hours spent on a matter would be kept at a minimum.

Robert Reinoso advised that the current Administrators have conducted the administration in an orderly fashion. To his knowledge there has not been anything advised by the ATO with regards to why it would be inappropriate for the current administrators to stay on. He continued to advise that the Administrators have not had a previous relationship with the Company, or the directors of the Company, and any other persons associated with the Company. He has not been provided with any adequate reasons as to why BRI Ferrier should be removed at this point in time.

John Sheahan advised that he is unable to comment on the above and that he has no knowledge of what the Administrators have done. He continued to say "that the fact here is the creditor with 95% of the value for the same reasons they want to change and they have given you those reasons why and that a court would look very carefully at those reasons and would need some convincing as to why someone with 95% of the value was not allowed to select their administrator/liquidator."

The Chairperson advised SLP that the comments made by Robert Reinoso were directed at the ATO and not SLP.

**Question**

The Chairperson asked SLP whether they were going to proceed with the resolution to replace the current Administrators as liquidators of the Company.

Kathleen Chau advised that in relation to the related party creditors who make up the other 5% of the creditors, any appointment by them or any indemnities provided by them, gives rise to an ATO concern about conflict of interests.

Kathleen Chau noted that the ATO has no issues with the conduct of BRI Ferrier.

The Chairperson advised the meeting that Mark Roufeil of PKF would address the meeting

Mark Roufeil advised the meeting that all insolvency practitioners present recognise the ATO's rights as a creditor to nominate someone else. He was concerned with moving an administration to another insolvency practitioner simply because PKF was nominated by the directors of the Company and that this questioned the independence of PKF.

**RESOLUTIONS –
APPOINTMENT OF
LIQUIDATOR**

The Chairperson advised that pursuant to Section 446A the Administrators are to be appointed Liquidators for the purposes of the winding up unless the creditors resolve to appoint another person as liquidator.

The Chairperson asked the meeting whether any creditor would like to put forward a resolution to replace the current administrators as liquidators of the Company.

Alex Moreno confirmed that he wished to press the nomination.

The Chairperson proposed the following resolution:

*"That John Sheahan and Ian Lock be appointed as liquidators of the Company."*

The resolution was put to a poll. The results of the poll were as follows:

|  | For | Against | Abstain | Total |
|---|---|---|---|---|
| Number | 1 | 3 | 0 | 4 |
| Value | 14,059,657.01 | 640,390.50 | 0.00 | 14,700,047.51 |

The Chairperson noted that he had the right to exercise a casting vote given that the poll did not produce a result. He advised as follows:

**CASTING VOTE**

In preparing for today's meeting, I have discussed with Mr Cummins the possibility that a motion might be put for the appointment of Mr John Sheahan and Mr Ian Lock as replacement liquidators, and that, after a poll having been taken, that motion might fall to be determined by me, as Administrator, exercising my casting vote.

Mr Cummins has informed me that the Commissioner had made representation that I was bound to act in accordance with the Commissioner's wishes, referring to *Brisconnections v Burness and Kokkinos* [2009] FCA 626. The Commissioner had asked us to indicate in advance of the meeting how we might vote; in my view, it was inappropriate to indicate how the vote would be cast until I had heard the representations of all interested parties.

I am a member of ARITA, and as such, in addition to the duties imposed on me by law, I am bound to adhere to the ARITA Code of Professional Practice. The Code provides guidance on the subject of the exercise of the casting vote in section 24.7.4. I have reviewed that section in preparation for today, as well as the Brisconnections decision. I note that I do not consider the Brisconnections decision to lay down a rule that in the current circumstances I am bound, for no other reason, to exercise the casting vote in the direction of the largest creditor: Brisconnection rests on separate issues as to the exercise of the casting vote, in particular that the reasons given by the appointee in that matter did not refer to certain relevant matters. Among other reasons, the importance of permitting creditors to make representations about what they consider to be relevant and irrelevant factors to which I should have regard in exercising the casting vote is a reason not to pre-empt the decision.

I have identified the following as relevant to my decision:
- Any difference in the likely cost of the liquidation. It is noted in the meeting that the charge out rates of SLP exceed those of the other practitioners that were put forward, both BRI Ferrier and PKF. It has also been noted that SLP maintain their time to conduct the liquidation will be kept at a minimum and that it is to be determined by creditors whether fees get approved or not.
- Independence, and in particular assurance that any replacement liquidator would satisfy the requirement to both be, and be perceived by an objective, informed observer to be, independent of all relevant parties.
- Attitude of the creditors
- The extent to which work undertaken to date in the Administration may need to be repeated, at the cost of creditors

- The need for, and willingness of creditors to fund further investigations.

I have decided that I should exercise my casting vote in favour of replacement, for the following reasons:

(a) Cost – I do not think the conduct of the liquidation is likely to cost significantly more (or less) in the hands of either liquidator.

(b) Independence – although the Commissioner has doubted the Administrators' independence, I do not consider that I am not independent.  However, I accept that John Sheahan and Ian Lock are also independent.  Creditors have had the opportunity to review their Declaration as to Independence, Relevant Relationships and Indemnities this morning and have not identified any matters in that Declaration which lead me to consider that Messrs John Sheahan and Ian Lock are not independent.

(c) Views of the creditors.  Having discussed the matter with Mr Cummins, it is evident that the Commissioner is distrustful of the Administrators and that the Commissioner's staff and solicitors have expressed in firm terms criticisms of the conduct of the Administration.  I have reviewed that correspondence together with Mr Cummins and believe the Commissioner's distrust and criticisms are both wholly unfounded.  At times criticisms have proceeded from assumptions about the role and duties of Administrators generally that are mistaken; and at other times on the basis of factual mistakes. Nonetheless, for whatever reason, the Commissioner would prefer to see the Administrators replaced by Messrs John Sheahan and Ian Lock.  I note that the Commissioner in effect represents one of two camps, and that the other is represented by entities related to the directors.   The Commissioner has foreshadowed proceedings for costs against the directors, and so it may be natural that those creditors oppose replacement.   There is a disproportion between the debts owed to the creditors, the debt owed to the ATO is substantially greater than the debt owed to related party creditors. The scheme of voting under the *Corporations Regulations*

requires that for a resolution to pass it need obtain both a majority in number and value. It does not prescribe a strong majority in either case however it is clearly a device intended to ensure that neither number nor value can by that attribute alone determine the fate of a motion, protecting the minority, either of value or number, from oppression. Nonetheless, it is relevant to have regard to the expressed views of creditors, and where there is a substantial disproportion in value, and comparatively low disproportion in number, to have regard to the expressed wishes of the creditors with value.

(d) I do not consider that, having regard to the scale of the Voluntary Administration, the need to repeat work, so far as it may be necessary, will have a material impact on the overall cost of the liquidation.

(e) The company has assets available which in the normal course would be sufficient to fund the liquidation. However, it may be necessary to conclude an arrangement to obtain funding, either by a creditor or by a commercial litigation funder. Having regard to the matters identified in the Administration, which concern the investigation of dealings with foreign banks in legal jurisdictions with which the Administrators have no particular familiarity, it is difficult to say that the costs of investigation are likely to be minimal. He noted that the ATO would be recommending funding to SLP to carry out the liquidation and possibly prosecute claims for the benefit of the creditors generally which he is unwilling to extend to the Administrators. While not determinative – the commissioner is not the only potential funder – having regard to the size of the matter, I consider this a relevant factor militating in favour of replacement.

(f) Having such regard, I therefore cast my vote *in favour* of the motion, and declare that the resolution *carries*.

The Chairperson used his casting vote for the resolution and the resolution has been taken to be carried.

**Question**

John Sheahan asked if it was possible to arrange for a discussion with the Administrators once the meeting has been concluded.

**Answer**

The Chairperson confirmed that this was possible and that the Administrators would assist in ensuring a smooth and efficient handover.

John Sheahan advised the meeting that they had to leave the meeting due to other matters they had to attend.

John Sheahan and Ian Lock left the meeting at 10:17am.

**QUESTIONS**      The Chairperson asked creditors if there were any further questions.

There were no further questions.

**CLOSURE**        There being no further business, the Chairperson thanked those present for their attendance and closed the meeting at 10:18am.

Signed as a correct record.

DATED this 8th day of May 2014.

**ANTONY RESNICK**
CHAIRPERSON

# Annexure D



002090809

Form **204**

PATRICIA HOLDINGS PTY. LIMITED
ATTN: PETER TRUELOVE
GROUND FL
21 GROSVENOR ST
NEUTRAL BAY NSW 2089

remove this top section if desired before framing

# Certificate of Registration of a Company

Corporations Law Sub-section 121(1)

This is to certify that

**B.C.I. FINANCES PTY. LIMITED**

**Australian Company Number 055 988 531**

is a registered company under Division 1 of Part 2.2 of the
Corporations Law of the Capital Territory and because of its
registration it is an incorporated company.

The company is limited by shares.

The company is a proprietary company.

The day of commencement of registration is
the first day of May 1992.

AUSTRALIAN
SECURITIES
COMMISSION

Given under the seal of the
Australian Securities Commission
on this first day of May, 1992.

A G Hartnell
Chairman