UNITED STATES BANKRUPTCY COURT      **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re:                              Chapter 15

B.C.I. FINANCES PTY LIMITED (In Liquidation), *et al.*,    Case No. 17-11266 (SHL)

             Debtors in a Foreign Proceeding.    (Jointly Administered)
------------------------------------------------------------------------x

<u>**MEMORANDUM OF DECISION**</u>

**A P P E A R A N C E S :**

**NIXON PEABODY LLP**
*Counsel for John Sheahan and*
*Ian Russell Lock as Liquidators*
55 West 46th Street
New York, New York 10036
By:    Robert N. H. Christmas, Esq.
        Christopher J. Fong, Esq.

**OLSHAN FROME WOLOSKY LLP**
*Counsel for Ligon 158 Pty Limited and*
*Andrew Binetter*
1325 Avenue of the Americas
New York, New York 10019
By:    Adam H. Friedman, Esq.
        Jonathan T. Koevary, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court are the foreign representatives' petitions for recognition under Chapter

15 of the Bankruptcy Code of the Australian liquidation proceedings of debtors B.C.I. Finances

Pty Limited, Binqld Finances Pty Limited, E.G.L. Development (Canberra) Pty Limited, and

Ligon 268 Pty Limited (the "Debtors"). *See Memorandum of Law in Support of Chapter 15*

*Petition* (the "Recognition Motion") [ECF No. 9].  Recognition is objected to by Ligon 158 Pty

Limited and Andrew Binetter (the "Objecting Parties").  *See Objection to Verified Petitions for*

*Recognition* (the "Recognition Objection") [ECF No. 16].  For the reasons that follow, the Court

grants recognition.

## BACKGROUND

The Debtors were Australian companies that operated primarily as intercompany

borrowing and lending entities within a group of companies controlled and operated by the

Binetter family.  *See Decl. of Tobin P. Meagher* ("Meagher Petition Decl.") ¶¶ 6, 7 [ECF No. 6];

*see also* Transcript of Hearing held on June 27, 2017 ("Hr'g Tr.") 62:17–22, 63:15–19 [ECF No.

25].  Andrew, Michael, Margaret, and Gary Binetter each held various director and management

positions for the Debtors from as early as the mid-1990's.  *See App'x To Petition, Tab 1*

(decision of Honourable Justice Gleeson of the Federal Court of Australia) ("Australian

Decision") ¶¶ 19, 34–36, 46–47, 49, 59, 60 [ECF No. 2].  The Debtors were the subject of

extended investigation by the Australian Taxation Office, and received significant tax

assessments that they were unable to satisfy.  *See* Hr'g Tr. 63:22–64:6; Australian Decision ¶ 2,

100.  The audit also resulted in findings of "fraud or evasion" by the Commissioner of Taxation.

Australian Decision ¶ 2.  The Debtors are each in liquidation in Australia, are not operating, and

have not traded for many years.  *See Decl. of Chris Ardagna in Support of Objection to Verified*

*Petitions for Recognition* ¶ 11 [ECF No. 16-2].

In August 2014, John Sheahan and Ian Russell Lock (together, the "Liquidators") were

appointed as joint and several liquidators of the Debtors in the Australian liquidation

proceedings.  *See* Meagher Petition Decl. ¶¶ 1, 8.  In January 2015, the Liquidators brought a

proceeding in the Federal Court of Australia seeking compensation relating to the Debtors' tax

assessments, claiming that the actions of the Debtors' directors that caused or contributed to

those liabilities constituted a breach of various statutory and fiduciary duties (the "SAD5/2015

2

Action"). *See* Australian Decision at PDF 3, and ¶¶ 4–8.  Respondents in the SAD5/2015 Action

include Andrew Binetter, Michael Binetter, other members of the Binetter family, Milgerd

Nominees Pty Limited, Erma Nominees Pty Limited, Ligon 159 Pty Limited, Ligon 158 Pty

Limited, the Estate of Emil Binetter, and the Estate of Erwin Binetter.  *See* Australian Decision

at PDF 3, 216, and ¶¶ 62–77.  A trial was held before her Honour Justice Gleeson who issued a

judgment finding that (i) most of the respondents, including Andrew and Michael Binetter,

breached their duties as directors of one or more of the Debtors and/or was knowingly involved

in the breaches; (ii) the breaches caused significant losses; and (iii) each of the respondents was

involved in certain breaches relating to the financial and taxation dealings of one or more of the

Debtors and thereby caused different elements and amounts of losses suffered by the Debtors.

*See* Hr'g Tr. 70:24–71:5; Australian Decision ¶¶ 870–1028.  As of summer 2017, the amount of

damages remained to be determined by Justice Gleeson.  *See* Hr'g Tr. 72:3–11.  However,

Andrew Binetter has admitted that the liability is at least AU$20,000,000.00.[1]  *See id*. 89:23–25

(reading a stipulation into the record).[2]  At some point during the Australian proceedings,

members of the Binetter family began to leave Australia.[3]  Hr'g Tr. 72:17–73:8.  Andrew and

Michael Binetter currently reside in New York City.  Hr'g Tr. 19:22–23, 72:17–73:4; *see also*

---

[1]     At today's exchange rate this converts to more than USD$15 million.

[2]     The Liquidators also commenced a second proceeding based on substantially the same subject matter as the SAD5/2015 Action, but against the various third party entities whom they allege contributed to the tax fraud (the "NSD1600/2015 Action").  *See* Hr'g Tr. 73:20–74:8.  As of summer 2017, this proceeding remained in progress. *See id.* 74:9–15.

[3]     The parties acknowledge that Andrew Binetter is an Australian citizen (*see* Recognition Objection ¶ 6; *Reply of Petitioners to Objection* ("Reply") ¶ 2 [ECF No. 18]), and the Objecting Parties have not disputed the Liquidators' assertion that Michael Binetter is as well (*see Supplemental Memorandum by Petitioners in Further Support of Verified Petitions for Recognition* ("Debtors' Suppl. Br.") at 10 [ECF No. 26]).

*Supplemental Memorandum of Law in Further Support of Objection* ("Objecting Parties' Suppl. Br.") ¶ 3 [ECF No. 28].

The Liquidators seek recognition of the Debtors' Australian liquidation proceedings as foreign main proceedings under Chapter 15 of the Bankruptcy Code in order to facilitate the administration of the Debtors' estates in Australia.  Specifically, the Liquidators seek the assistance of this Court in gaining access to and/or conducting discovery of Andrew and Michael Binetter, and any Debtor assets, documents, or records they may have with them in the United States.  *See* Hr'g Tr. 122:16–123:15; *see also In re Platinum Partners Value Arbitrage Fund L.P. (In Official Liquidation), et al.*, 2018 Bankr. LEXIS 1156, *14–*19 (Bankr. S.D.N.Y. Apr. 17, 2018) (discussing discovery generally as a form of relief available to foreign representatives in Chapter 15 cases pursuant to several different provisions of the Bankruptcy Code).  Mr. Sheahan believes that Andrew Binetter will not return to Australia voluntarily, and that Michael Binetter is unable to return due to ill-health.  *See* Hr'g Tr. 122:16–123:15.

The Objecting Parties argue that the Debtors are not eligible for relief under Chapter 15 because they have not satisfied Section 109(a) of the Bankruptcy Code, which dictates that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."  11 U.S.C. § 109; *see* Recognition Objection ¶¶ 2, 16–17.  Before commencing this case, the Debtors each placed retainers of $1,250 in the trust account of the Liquidators' counsel in this case, Nixon Peabody LLP, which they contend satisfies the property requirement under Section 109(a).  *See* Hr'g Tr. 91:24–92:2; 104:18–105:8, 110:22–23; Reply ¶ 11.  The Liquidators also contend that the Debtors' fiduciary duty claims in the SAD5/2015 Action against Andrew and Michael Binetter (the "Fiduciary Duty Claims") constitute property in the United States.  Reply ¶¶ 4, 9.  In contrast, the Objecting Parties argue

4

that the attorney retainer account does not satisfy Section 109(a) because the Liquidators improperly manipulated the Debtors' assets by placing funds in the New York account just to comply with the statute.  *See* Recognition Objection ¶¶ 2, 16–17.  The Objecting Parties further argue that the situs of the Debtors' other claimed property—the Fiduciary Duty Claims—is in Australia.  *See* Objecting Parties' Suppl. Br. ¶¶ 7–8, 15–16, 28.

A hearing on the Recognition Motion was held on June 27, 2017 (the "Recognition Hearing").  *See* Hr'g Tr 1:16, 4:2–5.  Subsequent to the Recognition Hearing and at the Court's request, the parties submitted additional briefing on the issue of the situs of the Fiduciary Duty Claims, including what law should resolve that question.  *See* Debtors' Suppl. Br.; Objecting Parties' Suppl. Br.  Extensive additional briefing was provided by the parties.  *See Declaration of Tobin P. Meagher* ("Meagher Decl.") [ECF No. 27] (supporting Australian legal analysis in Debtors' Suppl. Br.); *Limited Response to Supplemental Memorandum by Petitioners and Request to Re-Open Recognition Hearing* at 6 ("Objecting Parties' Limited Response") [ECF No. 33] (challenging Debtors' Australian legal analysis and the sufficiency of the record on Australian law); *Declaration of Chris Ardagna in Support of Objection to Verified Petitions for Recognition* ("Ardagna Decl.") ¶¶ 7, 12–13 [ECF No. 33-1] (supporting the Objecting Parties' Australian legal analysis); *Reply of Petitioners to Limited Response* [ECF No. 35]; *Declaration of Tobin P. Meagher in Support of Reply* ("Meagher Reply Decl.") [ECF No. 36].

## DISCUSSION

"Chapter 15 and the Model Law are designed to optimize disposition of international insolvencies by facilitating appropriate access to the court system of a host country (the United States, in the case of Chapter 15) by a representative of an insolvency proceeding pending in a foreign country."  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund,*

*Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (citing 11 U.S.C. § 1521); *see In re Oi Brasil Holdings*

*Cooperatief U.A.*, 578 B.R. 169, 193 (Bankr. S.D.N.Y. 2017) (stated purpose of Chapter 15

includes efficient administration of cross-border insolvencies that protects the interests of all

creditors and other interested parties and maximizes a debtor's assets) (citing 11 U.S.C. §

1501(a)).  Section 1517(a) of the Bankruptcy Code provides that the court shall, after notice and

a hearing, enter an order recognizing a foreign main proceeding if: "(1) such foreign proceeding

for which recognition is sought is a foreign main proceeding . . . within the meaning of section

1502; (2) the foreign representative applying for recognition is a person or body; and (3) the

petition meets the requirements of section 1515."  11 U.S.C. § 1517(a);[4] *see In re Oi Brasil*, 578

B.R. at 194.  A foreign proceeding is defined as a "collective judicial or administrative

proceeding in a foreign country, including an interim proceeding, under a law relating to

insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are

subject to control or supervision by a foreign court, for the purpose of reorganization or

liquidation."  11 U.S.C. § 101(23).

A foreign main proceeding "shall be recognized . . . if it is pending in the country where

the debtor has the center of its main interests," which is commonly referred to as a debtor's

"COMI."  11 U.S.C. § 1517(b)(1); *see In re Oi Brasil*, 578 B.R. at 195–97.  "The Bankruptcy

Code presumes that 'in the absence of evidence to the contrary, the debtor's registered office . . .

is . . . the [debtor's COMI].'"  *In re U.S. Steel Can. Inc.*, 2017 WL 3225914, at *6 (Bankr.

S.D.N.Y. July 31, 2017) (quoting 11 U.S.C. § 1516(c)).  To determine a debtor's COMI, courts

in the Second Circuit also consider "the location of the debtor's headquarters; the location of

---

[4]    A foreign representative is "a person or body, including a person or body appointed on an interim basis,
authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs
or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).  Such a "person" includes an
individual, partnership, or corporation.  11 U.S.C. § 101(41).

those who actually manage the debtor . . .; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).  Under the Bankruptcy Code, an order of recognition "shall" be entered if the foreign representative's petition meets the requirements of Section 1515.  11 U.S.C. 1517(a)(3).

Under Section 109(a) of the Bankruptcy Code, "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title."  11 U.S.C. § 109(a).  The Second Circuit has held that this requirement applies to Chapter 15 cases.  *See Drawbridge Special Opportunities Fund LP v. Barnet* (*In re Barnet*), 737 F.3d 238, 247 (2d Cir. 2013).[5]  In this case, the only issue in dispute is whether the Debtors have property in the United States to satisfy the requirements of Section 109(a) of the Bankruptcy Code.  *See* Recognition Objection ¶¶ 2, 16–17.  The Objecting Parties have not challenged any other requirements for recognition and the Court finds that these other requirements have been satisfied.  *See* Recognition Motion at 2–7; Recognition Objection at i, § I; *Stipulation By and Between Petitioners, Andrew Binetter and Ligon 158 PTY Limited Regarding Certain Matters Related to Recognition Hearing* ¶¶ 3, 4 [ECF No. 21].  Accordingly, the Court will only address the Section 109(a) issue in this decision.

---

[5]      *But see* 8 Collier on Bankruptcy ¶ 1501.03 (16th 2018) (criticizing approach in *Barnet*); *see also In re Avanti Commc'ns Grp. PLC*, 2018 WL 1725544, at *7 (Bankr. S.D.N.Y. Apr. 9, 2018) (referring to *Barnet* as "controversial").

**A.  The Retainer Account Satisfies Section 109(a)**

The Court concludes that the retainer account constitutes property of the Debtors that satisfies Section 109(a) of the Bankruptcy Code.  Indeed, it is well established that "[a] debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109."  *In re Poymanov*, 571 B.R. 24, 2017 WL 3268144, at *4 (Bankr. S.D.N.Y. 2017); *see, e.g.*, *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017); *In re Inversora Electrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016); *In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373–74 (Bankr. S.D.N.Y. 2014); *accord In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 411–13 (Bankr. S.D.N.Y. 2014) (finding a bank account held in New York and used, in part, to pay the debtor's U.S. bankruptcy counsel was sufficient property to satisfy Section 109); *In re Global Ocean Carriers, Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000) (finding the unearned portion of the retainer paid to the debtor's U.S. bankruptcy counsel was sufficient property to satisfy Section 109).  For example, in *Octaviar*, the foreign representatives established a retainer with their counsel by depositing $10,000 in a client trust account with a New York bank.  *See Octaviar*, 511 B.R. at 372.  The court found that the retainer was property in the United States that satisfied Section 109's requirements.  *See id.* at 373–74; *see also In re Inversora Electrica*, 560 B.R. at 655 (finding assets which included "(i) dollar deposits in a New York bank account, (ii) *an attorney retainer also on deposit in New York*, and (iii) New York law-governed debt containing a New York forum selection clause[,] *whether considered alone or together, . . . provide a sufficient basis for jurisdiction and venue in New York*.") (emphasis added); *In re Berau*, 540 B.R. at 82 (finding attorney retainer held by foreign representative's New York

8

counsel was "a sufficient basis" for Chapter 15 eligibility); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (finding Section 109(a) satisfied by retainers for New York counsel, as well as by U.S. debt).

As a general matter, courts that have construed the "property" requirement in Section 109 "with respect to foreign corporations and individuals have found the eligibility requirement satisfied by even a minimal amount of property located in the United States." *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 8–9 (Bankr. S.D.N.Y. 2003) (citing cases); *see In re Suntech Power*, 520 B.R. at 413 (finding establishment of an account in New York prior to filing bankruptcy sufficient to satisfy Section 109(a)); *In re McTague*, 198 B.R. 428, 431 (Bankr. W.D.N.Y. 1996) (permitting entity with mainly foreign operations and assets to be a debtor in a chapter 11 case upon showing of $194 in a United States bank account); *see also* 8 Collier on Bankruptcy ¶ 1517.01 (16th 2018) ("Following the *Barnet* ruling, bankruptcy courts within the Second Circuit have found that it takes very little to satisfy the section 109(a) requirement."). Section 109(a) only says that the debtor must have property, it "says nothing about the amount of such property nor does it direct that there be any inquiry into the circumstances surrounding the debtors acquisition of the property . . . ." *In re Suntech*, 520 B.R. at 413 (quoting *Octaviar*, 511 B.R. at 373). It would be contrary to the plain meaning of the statute to impose a quantum of property or a requirement that such property be "substantial." *See Octaviar*, 511 B.R. at 373.

This approach is also consistent with how cases have interpreted Section 109 for foreign companies outside of the Chapter 15 context. *See id.* at 372–373 ("There is a line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States.") (citing *In re Cenargo Int'l PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003); *In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex.

9

2005); *In re Global Ocean Carriers*, 251 B.R. at 39).  "Several courts have held that nominal amounts of property in the United States enable a foreign corporation to qualify as a debtor under Section 109(a) of the Bankruptcy Code."  *In re Yukos Oil,* 321 B.R. at 407 (finding funds deposited in a bank located in the United States sufficient to satisfy Section 109 of the Bankruptcy Code); *see GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A.* (*In re Globo Comunicacoes e Participacoes S.A.*), 317 B.R. 235, 249 (S.D.N.Y. 2004) (noting courts have required nominal amounts to qualify as a debtor under Section 109); *see also In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002); *In re Global Ocean Carriers*, 251 B.R. at 39 (holding a retainer paid on behalf of the debtors to U.S. bankruptcy counsel was sufficient property to satisfy Section 109).

Despite the weight of authority, the Objecting Parties nonetheless contend that the $1,250 retainers were deposited with Debtors' U.S. counsel "in order to manufacture eligibility under section 109 . . . ."  Recognition Objection ¶ 11.  Accordingly, the Objecting Parties urge the Court to refuse to countenance such "manipulation and gamesmanship" and find that the retainers do not satisfy the requirements of Section 109.  *Id.* ¶ 28; *see also id.* ¶ 30 (asking this Court to depart from the existing case law on this issue and "not follow *Octaviar* and its progeny.").

The court in *Octaviar* rejected a similar argument.  There, the objecting party argued that the retainer "was an improper or bad faith attempt to 'manufacture eligibility' to file for recognition under chapter 15 . . . ."  *Octaviar*, 511 B.R. at 372.  The court disagreed, finding that the foreign representatives had acted in good faith and, in any event, the court was required to "abide by the plain meaning of the words in [Section 109]," which says nothing about the amount of property required, "nor does it direct that there be any inquiry into the circumstances

10

surrounding the debtor's acquisition of the property . . . ." *Id.* at 373. Thus, the court found that

the retainer satisfied Section 109(a)'s requirements. *See id.* at 373–74; *see also In re Suntech*,

520 B.R. at 413 (rejecting objector's argument that it was "somehow improper" for debtor to

create eligibility by establishing a bank account to, in part, pay its U.S. bankruptcy counsel).

Likewise, the Court here finds that the $1,250 retainers constitute property for purposes

of Section 109 eligibility, and rejects the Objecting Parties' argument of bad faith. The Court's

conclusion is guided by the plain meaning of Section 109(a), as well as precedent in this

jurisdiction and elsewhere finding retainers to constitute eligible property under that Section.

Preventing a "foreign debtor from establishing eligibility to support needed chapter 15 relief will

contravene the purposes of the statute to provide legal certainty, maximize value, protect

creditors and other parties in interests and rescue financially troubled businesses." *In re Suntech*,

520 B.R. at 413 (citing 11 U.S.C. § 1501(a)). The court in *Suntech* recognized that despite a lack

of presence in the United States, enforcement of the debtor's scheme of arrangement here was

necessary for a successful restructuring. *See In re Suntech*, 520 B.R. at 413. The Debtors here

similarly require access to the members of the Binetter family in the United States who have

repeatedly opposed compliance with or participation in the various proceedings related to the

Binetter-controlled entities in Australia. *See* Hr'g Tr. 92:11–93:11; Hr'g Tr. 122:16–123:15.

In asking the Court to find that the Debtors' technical compliance with Section 109 is

insufficient, the Objecting Parties rely on *In re Patriot Coal Corp.*, 482 B.R. 718 (Bankr.

S.D.N.Y. 2012). However, that case is easily distinguishable. *Patriot Coal* was not a Chapter 15

case and did not involve the question of what constituted property under Section 109. Rather,

the Chapter 11 debtors in that case had arranged for *venue* in New York by forming affiliate

entities in the state in the days preceding their bankruptcy filing. *See In re Patriot Coal*, 482

B.R. at 726–28.  On the motions of several parties, the court in *Patriot Coal* faced the question of whether venue should be transferred out of New York under 28 U.S.C. § 1412.  *See id*. at 722.  While finding the *Patriot Coal* debtors in technical compliance with Section 1412 and explicitly ruling that the debtors had not acted in bad faith (*id.* at 741–42), the court determined that transfer to the Eastern District of Missouri (one of several forums where venue existed) was warranted in the "interest of justice" and for "the convenience of the parties" (*id.* at 753–54; *see* 28 U.S.C. § 1412).  The same questions and statutory considerations are simply not present here.

**B.  The Fiduciary Duty Claims also Satisfy Section 109(a)**

The Court also concludes that the Debtors' Fiduciary Duty Claims against Andrew and Michael Binetter constitute property in the United States to satisfy Section 109(a).  It is undisputed that these claims are property of the Debtors.  *See* Hr'g Tr. 23:7–11.  But the parties disagree on where these claims are located for purposes of Section 109(a), and even what law to apply in determining that location.  *See* Hr'g Tr. 24:4–6 (stating the dispute centers on the situs of the property).

1.  Australian Law Governs the Situs of the Fiduciary Duty Claims

As the parties acknowledge, the nature or scope of a debtor's interest in property is determined by "local" or "state" law.  *See* Debtors' Suppl. Br. at 2–3; Objecting Parties' Suppl. Br. ¶ 5; *see also In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 349 (2d Cir. 1992) (While "'federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the nature of a debtor's interest in a given item.'") (quoting *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1101 (2d Cir. 1990)); *In re Chateaugay Corp.*, 170 B.R. 551, 554–55 (S.D.N.Y. 1994) (same); *Butner v. United States*, 440 U.S. 48, 55 (1979) ("[p]roperty interests are created and defined by state law"); *In re Northern New England Telephone Operations LLC*, 795 F.3d 343, 350 (2d Cir. 2015) (same); *Kinney v. Gallagher*, 524

12

B.R. 455, 460 (W.D.N.Y. 2015) ("The existence and nature of a debtor's interest, and correspondingly the estate's interest, in property is determined by state law.").

Determining which state's law to apply here requires reference to applicable choice of law principles. *See In re Koreag*, 961 F.2d at 350 ("Having held that local law determines whether particular property is part of a debtor's estate, we must decide what local law will supply the substantive rule."); *see also In re Artimm, S.r.L.*, 335 B.R. 149, 163–64 (Bankr. C.D. Cal. 2005) (determining whether to turn over property to a foreign representative in a Section 304 case required confirmation of the nature of the debtor's interest in the property, which in turn required application of choice-of-law rules to select the governing non-bankruptcy substantive law); *Kayne v. Ho*, 2013 WL 12120081, at *5 (C.D. Cal. Nov. 4, 2013) (holding that determining which choice-of-law rules to apply in evaluation of the nature of interest in an alter ego claim was not necessary only because both federal and California choice-of-law principles produced same result). "Except in circumstances where a 'significant federal policy, [justifies] the imposition of a federal conflicts rule, . . .' bankruptcy courts apply the choice-of-law rules of the forum state to determine which state's substantive law governs." *In re Cinque Terre Fin. Grp. Ltd.*, 2017 WL 4843738, at *13 (Bankr. S.D.N.Y. Oct. 24, 2017) (quoting *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 607 (2d Cir. 2001)); *see also In re Koreag*, 961 F.2d at 351 ("Selecting the appropriate conflicts rules . . . thus . . . require[s] us to characterize the present issue . . . as either predominantly founded upon state-created rights, or involving important concerns implicating national bankruptcy policy.").

No party has convincingly identified—and the Court is unaware of—any overriding federal interest here in determining the situs of the Australian Fiduciary Duty Claims. Accordingly, New York state choice-of-law rules apply. *See In re Cinque Terre*, 2017 WL

4843738, at *13 ("The dispute . . . involves property questions which are resolved through application of local law. . . . Accordingly, no such overriding federal policy or interest is present here.") (citing *In re Koreag*, 961 F.2d at 349). Under New York choice-of-law rules, "the law of the jurisdiction having the greatest interest in the litigation will be applied." *Id.* (quoting *Kalb, Vooris & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)). Under this "greatest interest test," the Court concludes that Australian substantive law governs. The Liquidators were appointed by an Australian court, and are governed by Australian law, and Andrew Binetter is an Australian citizen. Perhaps even more importantly, the Fiduciary Duty Claims arose from acts committed in Australia and exist under Australian law, and any recovery will be distributed to foreign creditors through the Australian proceeding.[6] *See ICP Strategic Credit Income Fund, Ltd., et al. v. DLA Piper L.L.P*, No. 17-1669-bk, at 3–4 (2nd Cir. Apr. 23, 2018) (summary order affirming that New York law applies to *in pari delicto* defense to a claim for aiding and abetting a breach of fiduciary duty where defendant is a New York-based law firm and conducted all of its relevant work in New York).

Correspondingly, the Court rejects the Objecting Parties' contention that New York substantive law should govern. The Objecting Parties have not provided an explicit justification for this choice. *See* Objecting Parties' Suppl. Br. ¶¶ 4–7 (arguing that non-bankruptcy law determines the nature of a debtor's property interest, but not explaining why New York law is the appropriate non-bankruptcy choice). Instead, they simply assert without much explanation that New York's rules on the situs of judgments and intangible property should dictate this

---

[6]    Notably, even if federal choice-of-law rules applied, the result would be the same. *See In re Koreag*, 961 F.2d at 350 ("[W]e discern no significant difference between the applicable federal and New York choice-of-law rules. The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation. . . .") (citing *Wells Fargo Asia Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726–27 (2d Cir. 1991)); *see also In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 31 (S.D.N.Y. 2012) (collecting cases).

Court's conclusions. *See* Objecting Parties' Suppl. Br. ¶¶ 8–27. But the Objecting Parties do

rely heavily on a factual comparison of this case to *Fairfield Sentry*—which applied New York

law to determine the situs of a claim—to imply that *Fairfield Sentry* supports the same result

here. *See* Objecting Parties' Suppl. Br. ¶¶ 16–27 (citing *In re Fairfield Sentry Ltd.*, 768 F.3d 239

(2d Cir. 2014)). This reliance is misplaced, however. When the bankruptcy court in *Fairfield

Sentry* looked to "applicable nonbankrupcy [sic] law" and applied the so-called *Severnoe* test

under New York law to determine the situs of a securities law claim, it did so only because the

parties there had agreed that New York law should govern. *In re Fairfield Sentry Ltd.*, 768 F.3d

at 244 (citing *Severnoe Sec. Corp. v. London & Lancashire Insurance Co.,* 255 N.Y. 120, 123–

24 (1931)). This Court enjoys no such agreement here. Indeed, other decisions utilizing the

*Severnoe* test do so only after explicitly determining that New York law should apply. *See, e.g.,

In re Berau*, 540 B.R. at 82–84 (referencing the *Severnoe* test when determining the situs of U.S.

dollar denominated debt to be in the United States where "New York law expressly governs the

debt indenture"); *see also In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y.

2017) (citing *Berau Capital* when determining that intangible property rights stemming from a

debt contract governed by New York law constitute property in the United States).[7]

It appears that the Binetters' only connection to New York is their current residence. But

this is not enough to justify use of New York law here given the much stronger connections to

Australia. *See Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131

(S.D.N.Y. 1991) (applying Maryland substantive law in claims to pierce the corporate veil of

---

[7]      The Objecting Parties also rely heavily on *Fairfield Sentry* to argue that Section 1502(8) of the Bankruptcy
Code dictates application of non-bankruptcy law when determining the situs of intangible property. *See* Objecting
Parties' Suppl. Br. ¶¶ 22–23 (quoting *In re Fairfield Sentry Ltd.*, 768 F.3d at 244). While a plain reading of Section
1502(8) indicates that it does not apply in the context of Section 109(a), the Court does not need to further parse this
issue given that it has already concluded that non-bankruptcy law should apply here. *See In re Koreag*, 961 F.2d at
349.

defendant entity because state of incorporation and residence has greatest interest in regulating such issues even when personal jurisdiction existed over defendants in New York); *see also Parisi v. Wipro Ltd.*, 2016 WL 6905987, at *5, *7 (S.D.N.Y. Nov. 23, 2016) (applying New York law to a wrongful discharge claim after finding that the state's "substantial interest in protecting employees who live and work in New York" outweighed the interests of other jurisdictions in which the plaintiff "sometimes" performed work); *Pierre v. Gts Holdings, Inc.*, 2015 WL 7736552, at *3–*4 (S.D.N.Y. Nov. 30, 2015) (applying New York law to a statutory wages and hours claim after finding New York to have the greatest interest in regulating employment conduct for a chauffeur who conducted the majority of his work in the state).  In fact, when making their argument for finding an Australian situs under New York substantive law, the Objecting Parties highlight nearly the same facts that this Court relies upon to conclude that Australian law should govern under the greatest interest test:

> [i] the Liquidators were appointed by an Australian court; [ii] the Liquidators are deemed to have custody and control over the assets at issue; [iii] the Liquidators conduct the business of administering the Debtors' assets in Australia; and [iv] any proceeds will be administered in Australia pursuant to Australian insolvency law to primarily foreign creditors.

Objecting Parties' Suppl. Br. ¶ 21.

### 2.    The Record Regarding Australian Law Comports with Rule 44.1

The parties also disagree regarding the sufficiency and propriety of the record concerning Australian law.  The Objecting Parties specifically request that "[s]hould this Court determine that it must refer to Australian law, . . . the Court reopen the evidentiary hearing to allow for cross-examination of [Debtors' Australian law expert] and rebuttal."  Objecting Parties' Limited Response at 6.  But the Court has already accepted dueling declarations from both sides' experts, and declines to re-open the record on Australian law.  Instead, the Court has examined the existing record and finds it to be sufficient for determining applicable Australian law.

16

Indeed, the record here is consistent with Federal Rule of Civil Procedure 44.1, which governs determinations of foreign law. That Rule provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1. By that Rule, the Court is empowered to make determinations regarding foreign law, and granted discretion to decide on its own informed judgment what materials to consider in doing so. Here, the Liquidators first raised their contention that the Fiduciary Duty Claims satisfy Section 109(a) in their initial reply. *See* Reply ¶¶ 8–10. After the Recognition Hearing, the Court requested supplemental briefing from both parties specifically on that issue. The Liquidators set forth their argument for the application of Australian law in that briefing and submitted a supporting declaration from their Australian law expert, Mr. Meagher. *See* Debtors' Suppl. Br. at 9–14; Meagher Decl. The Court subsequently authorized the Objecting Parties to submit a supplemental response accompanied by a counter-declaration to address the details of any applicable Australian law. *See* Objecting Parties' Limited Response; Ardagna Decl. The Liquidators submitted a final reply accompanied by a reply declaration from their Australian law expert. *See Reply of Petitioners to Limited Response* [ECF No. 35]; Meagher Reply Decl. The Court is satisfied that the parties have been given a sufficient opportunity to be heard on the issue of foreign law.

Case law affirms the sufficiency of the record here. A similar scenario was handled by the court in *In re Daebo Int'l Shipping Co., Ltd.*, 543 B.R. 47 (Bankr. S.D.N.Y. 2015). In *Daebo*, plaintiffs relied upon a declaration submitted after trial to argue that, under Korean law, a Korean court's stay was geographically restricted. *See In re Daebo*, 543 B.R. at 53. The

defendant objected to the submission on the ground that the evidence had already been closed; the defendant alternatively requested permission to submit its own supplemental declaration in opposition.  *See id.*  Citing the flexibility allowed under Rule 44.1 and the Rule's direction that determinations of foreign law are questions of law not fact, the court decided to consider the terms of the relevant Korean statute and the declarations from both parties on the scope of the stay.  *See id.*; s*ee also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 2010 WL 3306876, at *3, *5 (S.D.N.Y. Aug. 20, 2010) (rejecting defendants' contention that plaintiff failed to support its assertions regarding Australian law by not proffering an expert or citing other authority, after accepting and considering an expert declaration and Australian tax law, treaties, and case law submitted by plaintiff in its reply); *c.f. Huang v. All Crematory Corp.*, 2002 WL 34370241, at *1 (N.D. Ohio Sept. 19, 2002) (upon cross-motions to exclude or limit expert legal testimony from both parties, the court cited Rule 44.1 and ruled that it would determine the Chinese law and would not submit the issue to the jury); *Faggionato v. Lerner*, 500 F. Supp. 2d 237, 244–48 (S.D.N.Y. 2007) (court based its interpretation of French law on the expert declarations submitted by both parties and accepted those areas where the two experts did not appear to be in disagreement).

### 3.  The Fiduciary Duty Claims are Located in New York Under Australian Law

Having found that Australian law applies, the Court turns to the parties' opposing expert declarations and submissions to determine what the substantive law of Australia says about the location of the Fiduciary Duty Claims.  When considering such foreign law expert declarations, it "is not the credibility of the experts that is at issue, it is the persuasive force of the opinions they expressed."  *Norwest Fin., Inc. v. Fernandez*, 86 F. Supp. 2d 212, 227 (S.D.N.Y. 2000) (quoting *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 153 F.3d 82, 92 (2d Cir.1998)); *see also Faggionato*, 500 F. Supp. 2d at 244–48 (accepting the conclusions of one of two dueling

French law experts because it is the "'persuasive force of the opinions' expressed that is
conclusive under Rule 44.1") (quoting *Itar–Tass Russian News,* 153 F.3d 82 at 92).

For the reasons below, the Court agrees with the Debtors' expert that Australian law
provides that the Fiduciary Duty Claims are located in New York where the Binetters reside.
The Liquidators submitted two declarations on the issue from their expert on Australian law.  *See*
Meagher Decl.; Meagher Reply Decl.  Mr. Meagher first concludes that the Fiduciary Duty
Claims against Andrew and Michael Binetter constitute property of the Debtors.  *See* Meagher
Decl. ¶ 12.  Mr. Meagher also concludes that Australian courts classify "a claim for breach of
fiduciary duty . . . in terms of property, as a chose in action . . . ."  Meagher Decl. ¶ 13.  The
Objecting Parties' expert does not dispute either of these conclusions (*see* Ardagna Decl. ¶¶ 7,
12–13), both of which the Court finds persuasive and adopts.[8]

Mr. Meagher proceeds to opine about the situs of the chose in action at issue here.  He
starts with the "general principle of Australian law that a debt, which is a specific type of chose
in action, is generally situated where the debtor resides . . . ."  Meagher Decl. ¶ 15.  He notes that
"two Australian cases have considered the situs of a chose in action (though not specifically a
claim for breach of fiduciary duty) and both decisions affirmed a decision of the English High
Court of Justice in *Jabbour v Custodian of Absentee's Property of State of Israel* [1954] 1 All
ER 145 (*Jabbour*)."  *Id.* ¶¶ 16–17 (citing *Australia in Ocean Marine Insurance Co Ltd v CSR Ltd*
[2012] NSWSC 1229 at ¶¶ 67–68 ("Ocean Marine"); *Australian Public Trustees Ltd (recs apptd)*
*(in its capacity as trustee and/or responsible entity of the Government Property Trust No 5) v*

---

[8]       In reaching these conclusions, Mr. Meagher explains that resolution of the issue "under Australian law
depends on the context in which the question is posed."  Meagher Decl. ¶ 7.  "As the Foreign Debtors are Australian
companies in liquidation, the relevant legal framework is that which governs their liquidation, namely, the
Corporations Act."  *Id.*  Mr. Meagher surveys case law (*see id.* ¶ 11) which shows "a consistent approach taken by
various courts in Australia holding that a claim that a company may have for breach of fiduciary duty is property of
that company under the Corporations Act."  *Id.* ¶ 12.

*Australian Public Trustees Ltd (recs apptd) (in its capacity as trustee of the Government Property Trust No 3)* (2012) 91 ACSR 236 at ¶¶ 31–32) ("APTL v. APTL")).  Getting to the crux of the issue, Mr. Meagher reasons that "[t]he principle in *Jabbour* (as stated at page 151 [of that case]) is that 'not only debts, but also other choses in action, are for legal purposes localised and are situated where they are properly recoverable and are properly recoverable where the debtor resides . . . .'"  Meagher Decl. ¶ 16.  So while Mr. Meagher has been unable to find any Australian cases specifically dealing with the situs of a chose in action for breach of fiduciary duty, he concludes that "an Australian court would likely apply the principle in *Jabbour*" and find the situs of the Fiduciary Duty Claims against the Binetters to be in New York.  *Id.* ¶ 19.

The Objecting Parties offer a competing view.  Their expert, Mr. Ardagna, counters that "[w]hile the general proposition applicable to a debt[,] that it is situated where the debtor resides . . . may extend to other choses in action[,] . . . this is a general proposition only."  Ardagna Decl. ¶ 13.  Mr. Ardagna has also been unable to identify any Australian case law that specifically addresses the situs of a chose in action for a breach of fiduciary duty.  *See id.*  ¶ 19.  Mr. Ardagna also notes that if applied "at the time the breaches occurred," "the principles established in the cases to which Mr. Meagher refers . . . would deliver the result that, in relation to Andrew and Michael, the situs of the Claims was in Australia."  Ardagna Decl. ¶ 24.  Therefore, "[w]hether the situs of the Claims . . . has changed as a result of [the Binetters] taking up residence in the United States is a matter for speculation."  *Id.* ¶ 25.  Specifically, "the Australian Courts might . . . craft a more particularized standard if the question of situs of breach of fiduciary duty is ever decided there . . . ."  Objecting Parties' Limited Response ¶ 16 (citing Ardagna Decl. ¶¶ 14–18).

Because of the possibility that an Australian Court *might* find an exception for breach of fiduciary duty claims to the general rule for choses in action, the Objecting Parties contend that

this Court should find the available material on Australian law insufficient, and should instead

apply New York state law. *Id*. ¶ 19.[9]  Specifically, the Objecting Parties contend that "no party

has sufficient information to answer the question" about the situs of an action for breach of

fiduciary duty under Australian law.  Objecting Parties' Limited Response ¶¶ 8–9.  Thus, the

Objecting Parties contend that the Liquidators propose "a novel interpretation of Australian law"

(*id* ¶ 19), and that an "essentially speculative sortie into Australian law by an American court

does not make sense" (*id* ¶ 18) (quoting *Standard Bank PLC v. Vero Insurance Ltd*., 2009 WL

458680 (D. Colo. Feb. 24. 2009), *vacated & remanded to state court on other grounds*, 2009 WL

4730474 (D. Colo. Dec. 7, 2009)).  Going beyond Mr. Ardagna's comments, the Objecting

Parties also criticize Mr. Meagher's reliance upon an English decision as the primary source for

his proposition regarding choses of action.  *See* Objecting Parties' Limited Response ¶ 12.  They

note that *Jabbour* does not address breaches of fiduciary duty, but rather an insurance claim for

unliquidated damages.  *See id*. ¶ 12.  Finally, the Objecting Parties point out that Mr. Meagher's

two Australian decisions applying *Jabbour* do not address breaches of fiduciary duty either, and

that Mr. Ardagna has somewhat distinguished their holdings from the general rule provided in

*Jabbour*.  *See id*.  ¶¶ 14–15 (citing Ardagna Decl. ¶¶ 14–15).

But the Court rejects the Objecting Parties' arguments that there must be perfect clarity

before applying foreign law.  In reaching this conclusion, the Court is mindful that "foreign law

should be argued and briefed like the domestic law."  *Curtis v. Beatrice Foods Co.*, 481 F. Supp.

---

[9]       While the Objecting Parties do not cite Rule 44.1, they presumably rely upon it.  Under Rule 44.1, "where
parties fail to raise the issue of the applicability of a foreign law to a particular issue, a district court may choose to
apply the law of the state in which it sits."  *MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285, 301
(S.D.N.Y. 2006), *aff'd on other grounds*, 235 F. App'x 827 (2d Cir. 2007) (citing *Clarkson Co. Ltd. v. Shaheen*, 660
F.2d 506, 512 n. 4 (2d Cir. 1981)).  Thus, "where either no information, or else insufficient information, has been
obtained about the foreign law, the forum will usually decide the case in accordance with its own local law . . . ."
*Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, 2002 WL 1144903, at *2 (S.D.N.Y. May 29, 2002) (quoting
Restatement (Second) of Conflicts § 136, cmt. h (1971)).

1275, 1285 (S.D.N.Y. 1980), *aff'd*, 633 F.2d 203 (2d Cir. 1980) (quoting Pollack, Proof of

Foreign Law, XXVI American Journal of Comparative Law 470, 475 (1978)).  "[A]pplying

foreign law might pose a burden . . . . [but] interpret[ing] (1) decisions from [foreign courts], (2)

[foreign] statutes . . . , and (3) local ordinances . . . . is precisely the kind of work American

judges perform on a daily basis."  *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 808 (4th Cir.

2013) (denying a motion to dismiss based on *forum non conveniens* and the difficulty of

applying Pakistani law) (citations omitted).  The Court concludes that there is sufficient clarity

under Australian law—as described by the two experts—to reach this conclusion.  As the

Liquidators point out, *Jabbour* is relied on not only because English decisions are often given

weight in Australian courts, but because "it reflects the position under Australian law."  Reply to

Limited Response at 6 (citing Meagher Decl. ¶¶ 16–17; Meagher Reply Decl., at ¶¶ 8–10).

Indeed, the Objecting Parties' Australian law expert does not critique reliance on an English case

generally.

Furthermore, Mr. Meagher and the cases he cites demonstrate the generalized principle

behind *Jabbour* that the location of a chose in action turns on considerations of enforcement.

*See* Meagher Reply Decl. ¶¶ 4–15 (citing *APTL v. APTL* ¶¶ 31–33 (finding the situs of a share in

a company to be located where the company is incorporated because of considerations relating to

enforcement); *Ocean Marine* ¶¶ 65–71 (explicitly quoting *Jabbour* to apply the rule that a chose

in action is located where "properly recoverable" in the context of a claim for a debt due on a

deed)).  The Objecting Parties' expert does not present any reason—much less a persuasive

one—why the same concerns about enforcement of a chose in action generally would not lead to

exactly the same rule for a fiduciary duty claim.  Indeed, such an inference is logical and does

not require particularly nuanced or subtle legal reasoning.  *C.f. Wultz v. Bank of China Ltd.*, 2012

WL 5431013, at *3–4 (S.D.N.Y. Nov. 5, 2012) (evaluating dueling expert opinions on Chinese

tort law and rejecting a textualist approach where the "discrepancy between language and legal

reality . . . calls into question the attempt to deduce Chinese law simply from the language of

Chinese legal sources, without critical attention to the practices of Chinese legal institutions"). It

is notable that Mr. Ardagna does not cite any additional cases to support his line of argument, but

instead just attempts to distinguish the Australian cases relied upon by Mr. Meagher.

Indeed, courts have typically found proof of foreign law to be insufficient under Rule

44.1 only where there was a complete failure to raise the issue or present any supporting

material. *See, e.g., MSF Holding Ltd.*, 435 F. Supp. 2d at 301 (analyzing a contract under New

York law where the parties did "not ma[k]e any arguments regarding the enforcement of . . . its

terms, including its choice-of-law clause, which call[ed] for Dutch law to govern the

agreement."); *Wujin Nanxiashu Secant Factory*, 2002 WL 1144903, at *2 (denying a motion to

dismiss arguing failure to state a claim under Chinese contract law where "defendants . . .

provided . . . no more than a conclusory statement of Chinese law[,] . . . no text of the statutes on

which they rel[ied], no treatises, no caselaw, and no expert affidavit supporting their

interpretation").

The cases relied upon by the Objecting Parties do not support their posture. These cases

reject foreign law only where there has been a similar total failure to argue foreign law or present

supporting material, or otherwise resolve the issue of foreign law on other bases. *See* Objecting

Parties' Limited Response ¶ 18 (citing *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312,

1321–22 (11th Cir. 2004) ("The offshore insurers did not direct the district court or this court to a

single rule of law for the Cayman Islands, either by case law or by statute. They cannot credibly

argue that a different result would follow if that jurisdiction's law were followed."); *Republican*

*Nat. Comm. v. Taylor*, 299 F.3d 887, 891 (D.C. Cir. 2002) ("In any event, none of the parties

cited any Mississippi cases in their briefs, and at oral argument none suggested any way in which

Mississippi law differs from that of the District of Columbia on the issues that are relevant to our

decision."); *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983) ("[N]one of

the parties claimed the applicability of Bahamian law or asserted that it differs from that of

Florida."); *Seguros Tepeyac, S. A., Compania Mexicana de Seguros Generales v. Bostrom*, 347

F.2d 168, 174–76 (5th Cir. 1965) (issued prior to the passage of the modern Rule 44.1 and side-

stepping the district court's analysis of the sufficiency of proof of Mexican law by holding Texas

law to apply anyhow); *c.f. Standard Bank PLC*, 2009 WL 458680, at *7 (holding that "it ma[de]

little sense" for an American court to engage with an apparently novel argument under

Australian law, but in the context of a *forum non conveniens* motion, and only after concluding

that "an Australian court [would] likely repeat that same analysis prior to any enforcement of an

order" from the American court)).  In contrast to these cases, the Australian law experts here

provided a credible canvasing of relevant foreign law, and the Court's conclusions require only a

standard exercise of case law interpretation.

Finally, in support of finding a New York situs for the Fiduciary Duty Claims, the

Liquidators also rely on the proposition that "as a general matter, where a court has both subject

matter and personal jurisdiction, the claim subject to the litigation is present in that court."

Debtors' Suppl. Br. at 3–4 (quoting *Octaviar*, 511 B.R. at 372 (citing *In re British Am. Ins. Co.

Ltd.,* 488 B.R. 205, 231–32 (Bankr. S. D. Fla. 3013); *In re Iglesias,* 226 B.R. 721, 723 (Bankr. S.

D. Fla. 1998)).  While the Court need not address this alternative argument given the conclusions

above, this reasoning would also result in a New York situs for the Fiduciary Duty Claims given

that the Binetters' reside in New York and this Court has jurisdiction over matters impacting the

Debtors and their estates.  *See Residential Funding Co., LLC v. Greenpoint Mtg. Funding, Inc.*

*(In re Residential Capital, LLC)*, 519 B.R. 593, 599 (S.D.N.Y. 2014) (explaining the nature of a

bankruptcy court's "related to" jurisdiction over civil proceedings affecting a debtor's estate)

(quoting *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 579 (2d Cir. 2011)).

## CONCLUSION

For all the reasons set forth above, the Court grants the Recognition Petition.  The

Liquidators are directed to settle a proposed order on seven days' notice.  The proposed order

must be submitted by filing a notice of the proposed order on the Case Management/Electronic

Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice.  A

copy of the notice and proposed order shall also be served upon Objecting Parties' counsel.

Dated: New York, New York
         April 24, 2018

                              */s/ Sean H. Lane*
                              UNITED STATES BANKRUPTCY JUDGE