**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:                                          Chapter 15

B.C.I. FINANCES PTY LIMITED (in Liquidation),              Case No. 17-11266-pb

       Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>MODIFIED BENCH RULING ON MOTION TO COMPEL</u>[1]

**A P P E A R A N C E S :**

MAYER BROWN LLP
*Attorneys for the Foreign Representative*
BY:    GLEN A. KOPP

CLAYTON UTZ
*Attorneys for the Foreign Representative*
BY:    TOBIN P. MEAGHER

OLSHAN FROME WOLOSKY, LLP
*Attorneys for Andrew Binetter, Samantha Binetter-Kelliher and Michael Binetter*
BY:    JONATHAN T. KOEVARY
       ANDREW B. LUSTIGMAN
       ROBERT M. APPLETON

SPEED AND STRACEY, LAWYERS
*Attorneys for Andrew Binetter, Samantha Binetter-Kelliher and Michael Binetter*
BY:    MALCOLM STEWART

PITCHER PARTNERS
*Attorneys for Andrew Binetter, Samantha Binetter-Kelliher and Michael Binetter*
BY:    CHRIS ARDAGNA

**<u>Hon. Philip Bentley</u>**
**<u>United States Bankruptcy Judge</u>**

---

[1]  This decision was dictated on the record at the February 18, 2025 hearing on this motion. It has been modified in limited respects—principally to improve its readability, including by the addition of an introduction, and to add citations for a few cases—but the substance of the ruling has not changed. Given the decision's origins as a bench ruling, it has a more conversational tone and fewer citations than a memorandum decision.

## **Introduction**

The motion before the Court continues a decades'-long saga of tax avoidance and alleged diversion of assets by members of the Binetter family, founders of the Nudie Juice beverage empire in Australia. A decade ago, the Australian Tax Office (the "ATO") levied tax assessments in excess of AU $100 million against four of the Binetters' companies (the "Prior Foreign Debtors"), finding they had engaged in a 20-plus-year tax evasion scheme. A liquidator appointed for those companies then obtained judgments of more than $100 million against Binetter family members and other companies they controlled. In 2018, six additional Binetter companies (the "New Foreign Debtors") went into liquidation, and the ATO subsequently levied further tax assessments, totaling more than $25 million, against two of the New Foreign Debtors.

John Sheahan, who serves as liquidator and foreign representative for all ten of these debtors, commenced chapter 15 cases for the Prior Foreign Debtors in 2017, followed by chapter 15 cases for the New Foreign Debtors four years later. On behalf of the New Foreign Debtors, he has filed this motion to compel three members of the Binetter family to produce documents responsive to his Rule 2004 subpoenas. He claims the documents he seeks are needed to recover assets diverted by the Binetters and, in addition, could potentially lead to tens of millions of dollars of claims by the New Foreign Debtors against a variety of parties—not only the Binetters and their companies (collectively, the "Binetter parties"), but also banks, accounting firms or other parties that may have aided and abetted the Binetters' breaches of fiduciary duty as directors and officers of the New Foreign Debtors.

The Binetters object to the requested discovery on the ground that its principal relevance relates to claims that Mr. Sheahan released as part of a global settlement that he and the ATO reached with the Binetters in 2018. Mr. Sheahan responds that, at the time of that settlement, he

2

had not yet been appointed liquidator of the New Foreign Debtors (just the Prior Foreign Debtors), and therefore, under Australian law, the releases the New Foreign Debtors gave do not bind him and are subject to avoidance. These issues are complex and are currently being litigated in the Australian courts. Based both on my own assessment of the issues and on comity considerations, I conclude that it is appropriate to allow the liquidator's requested discovery to proceed.

### Factual Background

Members of the Binetter family emigrated to Australia from Europe in 1950 and proceeded to build a number of successful Australian businesses, including an international beverage business by the name of Nudie Juice. The family operated their businesses through a complex web of entities based principally in Australia. In or about 2014, a longstanding audit by the Australian Tax Office culminated in the ATO's issuance of tax assessments against the Prior Foreign Debtors. These tax assessments totaled more than AU $100 million, including penalties and interest. The basis for these assessments was the ATO's finding that the Prior Foreign Debtors had engaged in a 20-plus-year tax evasion scheme, under which they entered into purporting lending arrangements with Israeli banks and reported nonexistent interest expense on their Australian tax returns in a fraudulent attempt to reduce the taxes they owed in Australia.

The Prior Foreign Debtors were unable to satisfy the tax liabilities that resulted from these assessments. As a result, in 2014, Mr. Sheahan was appointed as liquidator for the Prior Foreign Debtors.[2] In 2015, Mr. Sheahan, as liquidator, commenced a breach of fiduciary duty suit on behalf of the Prior Foreign Debtors against a number of members of the Binetter family seeking compensation related to the tax assessments that had been levied against these debtors. Justice

---

[2] A second individual, Ian Lock, was appointed to serve as co-liquidator with Mr. Sheahan but subsequently resigned from that position. Since then, Mr. Sheahan has been the sole liquidator for both the Prior Foreign Debtors and the New Foreign Debtors. For simplicity's sake, I refer in this ruling simply to "the liquidator," without regard for whether there were two liquidators or just one at any given time.

3

Gleason of the Federal Court of Australia found for the liquidator. Specifically, she found that a number of members of the Binetter family had breached their fiduciary duties to these debtors. Justice Gleason's decision was subsequently affirmed by the full court, and judgments collectively in excess of $100 million were entered against a number of Binetter family members, as well as against a number of their companies.

At some point, it became apparent that two members of the Binetter family, Michael and Andrew, had moved to the United States following the ATO's tax assessments. The liquidator therefore expanded the geographic reach of his investigation, and in 2017 he filed chapter 15 petitions in this Court on behalf of the Prior Foreign Debtors. Judge Lane, who handled those cases before they were transferred to me in 2023, granted recognition of the chapter 15 cases in May 2018. The liquidator then served subpoenas on several Binetter family members seeking discovery into the location of Binetter family assets in the United States. After some litigation, Judge Lane ordered compliance with the subpoenas.

Following Judge Lane's ruling, a global settlement was reached in October 2018 among a number of parties—specifically, the liquidator of the Prior Foreign Debtors, the Australian tax commissioner, a number of Binetter family members, and the New Foreign Debtors.[3] The settlement consisted of three related agreements, which collectively comprised a single integrated settlement. The agreement most relevant to the current motion was a document known as the Deed of Release, which contained a number of releases and covenants not to sue. These included releases of and covenants not to sue the Binetters and their companies given by given by Mr. Sheahan on behalf of the Prior Foreign Debtors, and also similar releases and covenants in favor of the Binetter parties given by the New Foreign Debtors.

---

[3] The New Foreign Debtors are six additional Binetter family companies, which the parties have referred to in shorthand as Gerobin, Erbin, Rawbin, Marbin, Erma and Ligon 158.

Notably, at the time of this settlement, a liquidator had not yet been appointed for the New Foreign Debtors, just for the Prior Foreign Debtors. However, the parties contemplated that Mr. Sheahan would subsequently be appointed as liquidator for the New Foreign Debtors. Later in 2018, he was in fact appointed to that position.

Two years later, in 2020, the Australian Tax Office found that two of the New Foreign Debtors, Erbin and Rawbin, had participated in a tax evasion scheme substantially similar to the scheme for which the ATO had previously assessed taxes, interest and penalties against the Prior Foreign Debtors. The ATO assessed more than $25 million in taxes, interest and penalties against these two New Foreign Debtors.

In September 2021, the liquidator moved to reopen the prior chapter 15 cases—i.e., those for the Prior Foreign Debtors—and he also filed chapter 15 cases for the New Foreign Debtors. He argued that these cases were necessary because evidence had surfaced indicating that the Binetter family had used the New Foreign Debtors, as well as the Prior Foreign Debtors, as part of a scheme to hide assets and to avoid tax. The liquidator argued that as a result, he needed additional discovery in the United States. In December 2021, Judge Lane reopened the prior chapter 15 cases and granted recognition of the New Foreign Debtors.

In 2023, Judge Lane entered an order authorizing the liquidator to take Rule 2004 discovery of the Binetters. On behalf of the New Foreign Debtors, the liquidator served Rule 2004 subpoenas on three members of the Binetter family—Michael Binetter, Andrew Binetter and Samantha Kelliher. After extensive back and forth between the parties, the Binetters refused to produce a single responsive document, and the liquidator then filed this motion to compel. The Court heard argument at two hearings—an initial hearing on October 8, 2024, followed by further briefing on the enforceability of the Deed of Release and then a second hearing on February 18, 2025. The

Court issued its bench ruling later that day.

## Discussion

The Binetters' principal argument in opposition to the discovery sought by the liquidator is that the Deed of Release bars all claims of the New Foreign Debtors against the Binetter parties, and therefore, the discovery the liquidator seeks to support such claims serves no valid purpose.

The liquidator makes two main arguments in response. First, he argues that, under Australian law, the releases given by the New Foreign Debtors should be set aside as a self-interested transaction, and in any event, those releases do not bind him in his capacity as liquidator of the New Foreign Debtors because he was not appointed liquidator for those debtors until after the settlement. Second, he argues that, even if the Deed of Release were found to bar all claims by the New Foreign Debtors against the Binetters, he would still be entitled to Rule 2004 discovery to explore whether the New Foreign Debtors have claims against third parties that are not protected by the Deed of Release—for example, banks, accountants or other parties that might have aided and abetted breaches of fiduciary duty by the Binetters as directors and officers of the New Foreign Debtors.

**A. The liquidator's potential claims against non-Binetter parties**

Addressing the second of these two arguments first, I find that, even if I were to rule that the Deed of Release is enforceable, the liquidator still would be entitled to discovery, because the requested discovery is relevant to the New Foreign Debtors' potential claims against third parties that have not been released.

I reach this conclusion for several reasons. First, the liquidator has shown in his papers that at least $1 million was diverted from the New Foreign Debtors to the Binetters themselves or their companies. And of course, discovery could turn up additional sums. I find that, even if the Deed

of Release is binding, it is appropriate for the liquidator to take discovery to determine whether these transfers may give rise to claims against third parties, such as claims that these diversions of assets constituted breaches of fiduciary duty by the Binetters, which third parties aided and abetted.

In addition, as noted above, the ATO in June 2020 assessed at least $25 million of taxes, penalty and interest against two of the New Foreign Debtors, Erbin and Rawbin, based on tax evasion allegations substantially similar to those that supported the earlier tax assessment against the Prior Foreign Debtors. Here too, it seems eminently plausible that the conduct relating to this tax assessment involved breaches of fiduciary duty by the Binetters, just as the tax assessment against the Prior Foreign Debtors resulted in breach-of-duty judgments in excess of $100 million against Binetter family members. It seems very possible that the Binetters will be found to have committed breaches of fiduciary duty giving rise to damages of $25 million or more in connection with the tax evasion that the ATO has found the New Foreign Debtors committed. It also seems possible that third parties such as accounting firms and banks may have participated in these breaches of fiduciary duty. That is a legitimate avenue of inquiry for the liquidator to pursue, and I find that discovery is warranted in that regard.

The Binetters argue that I should be cautious in permitting discovery, because discovery is granted less freely in chapter 15 cases than in other bankruptcy cases, where the standard is supplied by Bankruptcy Rule 2004. As every bankruptcy lawyer knows, Rule 2004 authorizes fishing expeditions. In chapter 15 cases, the standard for discovery is governed by Bankruptcy Code § 1521(a)(4), which may be more restrictive. As the Binetters note, Judge Stuart Bernstein of the Southern District of New York gave some weight to this distinction in *In re Glitnir*, 2011 WL 3652764 at *6 & n.15 (Bankr. S.D.N.Y. Aug. 19, 2011), suggesting that a full-fledged Rule 2004 fishing expedition may not be warranted in a chapter 15 case.

I find that *Glitnir* does not defeat the discovery requested here. In the first place, the facts of *Glitnir* were very different from those here. That case involved discovery against principals who may not have committed any unlawful acts themselves. That was a key part of Judge Bernstein's finding—that the foreign representative was fishing with respect to whether the principals had themselves committed improper acts. Here the facts are very different. The Binetters have been found by final judgments of the courts of Australia to have engaged in a multi-decade tax evasion scheme that led to judgments in excess of $100 million. They are not parties who can claim to be innocent babes in the woods, as the principals in *Glitnir* may have been.

In addition, the language of Code § 1521(a)(4) supports the discovery sought in this case. That section permits discovery "concerning the debtor's assets, affairs, rights, obligations or liabilities." It is black letter law that a cause of action is an asset of a debtor. The liquidator seeks discovery into potential causes of action of the New Foreign Debtors. This is discovery that concerns the assets of those debtors and therefore is authorized by section 1521(a)(4)

My ruling on this point is sufficient by itself to justify much, if not all, of the discovery the liquidator seeks. Nevertheless, I will also address the Binetters' arguments with respect to the Deed of Release.

## B.  The Deed of Release

The Binetters argue that the Deed of Release on its face bars the New Foreign Debtors' claims against the Binetter parties, and that I should therefore bar any discovery into claims of that sort unless and until the Australian courts find the Deed of Release to be unenforceable or set it aside. In support of this argument, the Binetters have offered four declarations by their Australian counsel, Messrs. Ardagna and Stewart. In response, the liquidator has offered the declaration of his Australian counsel, Mr. Meagher. Mr. Meagher argues that under Australian law, the Deed of

Release cannot bind a subsequently appointed liquidator such as Mr. Sheahan, and in addition, the Deed of Release will be set aside as a self-interested transaction.

Based on my review of the declarations filed by Australian counsel, as well as counsel's arguments at the hearing, I find the Binetters have not demonstrated that the Deed of Release is enforceable against the liquidator under Australian law. In the first place, the Binetters' Australian counsel did not offer any basis for me to reject either of the two general propositions advanced by the liquidator. That is, they have offered no reason for me to reject the general proposition that a release cannot bind a subsequently appointed liquidator, or the general proposition that a self-interested transaction, such as a release of the Binetters by companies they control, is subject to being set aside.

Rather than disputing either of those principles as a general matter, the Binetters focus on the specific facts here, arguing that principles of ratification and estoppel should cause me to reach the opposite result in this case. I agree that the ratification issue they raise may be significant—or at least, it would be if U.S. law governed this dispute. Under U.S. law, the Binetters might well have a good argument that Mr. Sheahan is bound by the Deed of Release, even in his capacity as liquidator of the New Foreign Debtors, because at the time he signed it, he knew that he was going to be appointed or at least that he might be appointed to that position in the near future, and he didn't carve out any explicit right to challenge the enforcement of the release.

However, the Binetters are asking me to make this finding as a matter of Australian, not U.S., law, and they have given me no basis to find that they're likely to prevail on this issue under Australian law. In the first place, there may be differences between U.S. and Australian law with respect to the principles of ratification and estoppel. The Binetters' counsel chose not to brief that in any detail. He just recited those principles at a high level of generality. More important, I have

no way of knowing how the Australian courts would reconcile the general principles of ratification and estoppel with the general principle, also followed by Australian courts, that the rights of a liquidator cannot be restricted by an agreement entered into prior to his appointment. Based on the record before me, it appears this may be an issue of first impression under Australian law.  The parties have not pointed me to any Australian case law addressing how to resolve the conflict between these two competing sets of legal principles, and I suspect the reason may be that no such case law exists.

My ruling on this issue is powerfully reinforced by a recent decision by the Australian judge, Justice Elizabeth Anne Cheeseman, presiding over a pending suit between the New Foreign Debtors and Mr. Sheahan on the one hand and the Binetters on the other. That lawsuit—the so-called *Shield* suit—was brought by Mr. Sheahan in 2022, in his capacity as liquidator for the New Foreign Debtors, to reinstate a Binetter-associated company, Shield Holdings Australia, which had been deregistered by the Australian Securities and Investments Commission.  The suit also asked the court to appoint him as Shield's liquidator so he could investigate and pursue any claims Shield might have, including claims against the Binetters.

The Binetters objected to the relief requested in the *Shield* suit, and one of their main objections was that reinstatement of Shield and the appointment of Mr. Sheahan as liquidator would serve no good purpose and would be unjust because of the Deed of Release. They based this objection on the exact same argument they are making before me—namely, that the Deed of Release barred any claims the liquidator could bring as liquidator of the New Foreign Debtors against Binetter-associated parties, including Shield. This objection, including the issues of ratification and estoppel, was fully briefed and argued before Justice Cheeseman.

In a decision issued on January 9, 2025 in the *Shield* suit, Justice Cheeseman made two

10

key rulings. First, she ruled that resolution of the validity and enforceability of the Deed of Release "will take some time" and might not be finally resolved until the conclusion of an eventual appeal, which could take years. Second, she ruled that it is appropriate to allow investigations into potential claims by Shield against the Binetters and their various companies to proceed during the next few years while the enforceability of the Deed of Release is litigated. She found that, if this discovery is not allowed to proceed, a lot of harm could result. In particular, statutes of limitation could run, and "the investigative trail will continue to cool." *See* Jan. 9, 2025 decision of Justice Cheeseman in *Ligon 158 Pty Limited (in liq) v. Shield Holdings Australia Pty Ltd (in liq)* (Dkt. 163), at ¶¶ 46-49.

Justice Cheeseman's ruling on the first of these issues reinforces my own conclusion that the Binetters have not demonstrated that the Deed of Release is enforceable against the liquidator under Australian law. Moreover, considerations of comity support giving weight to Justice Cheeseman's ruling on this point. As the Second Circuit observed in *Bugliotti v. Republic of Argentina*, 952 F.3d 410, 414 (2d Cir. 2020), while U.S. courts are often required to make their own independent interpretations of foreign law, they should be guided in doing so by the most authoritative or persuasive materials. "A decision by [the foreign] court as to the meaning of the relevant foreign laws may be preferable" to other submissions, such as the declarations the parties' lawyers have submitted here. *Id.* I find that Justice Cheeseman's decision is substantially more authoritative and persuasive than the declarations submitted by counsel.

In addition, I find that Justice Cheeseman's ruling on the second issue—her conclusion that discovery should be allowed to proceed pending resolution of the Deed of Release issue—is also entitled to substantial weight. In the first place, comity supports deference to this ruling. When an Australian court has ruled not only that an important issue of Australian law is unsettled and will

11

take years to resolve, but also that it is appropriate to allow discovery by an Australian liquidator seeking redress for an Australian tax evasion scheme to proceed pending resolution of that issue, it would be presumptuous for a U.S. court to reject that conclusion.[4]

In addition, my own independent assessment of whether discovery should be allowed to proceed aligns with that of Justice Cheeseman. Like Justice Cheeseman, I find that a proper assessment of this issue requires a weighing of the interests at stake, which in this case tilt decisively in favor of allowing discovery to proceed.

The Binetters are correct that, if the Australian courts were eventually to rule that the Deed of Release is enforceable, a ruling allowing discovery to proceed now could result in the Binetters bearing excessive discovery burdens, since in that scenario at least some of the discovery will be taken in pursuit of claims ultimately found to have been released. But how big would any such unfair burden on the Binetters be? At most, they might have to spend a few hundred thousand dollars in providing discovery that turns out to be fruitless. That is a guess on my part; the cost could be much lower, but I doubt very much that it would be higher.

The potential harm on the other side of the scale is much greater. If I don't allow discovery and a few years from now there's a final ruling that the releases are unenforceable, then as Justice Cheeseman noted, delaying discovery may have caused a lot of harm. Statutes of limitation may have expired, and the investigative trail may have cooled. The magnitude of these losses appears to be much greater than the magnitude of the burdens the Binetters will suffer by having to provide discovery. The liquidator's potential recoveries could easily be in the millions of dollars, and

---

[4] The Binetters' counsel have themselves argued that the Australian courts would consider it preferable for the Deed of Release's validity be determined by the Australian courts, rather than by a U.S. bankruptcy judge. This preference presumably applies also to other issues of Australian law—particularly in cases that seek redress for wrongs that harmed Australians—such as the decision whether to allow the Australian liquidator to take discovery in this case. This preference is sound and should be respected by U.S. courts to the extent feasible. Fortunately, in this case, deference to the Australian courts is eminently feasible.

recoveries could be in the tens of millions of dollars if the liquidator were to prevail on aiding and abetting or other claims against parties that assisted the New Foreign Debtors' tax evasion.

For all of those reasons, I find that it is appropriate for the discovery requested by the liquidator to go forward, and I will grant the liquidator's motion to compel discovery, subject to the few remaining issues that I will turn to now.

## C. Remaining issues

A number of issues remain. First, the Binetters have objected to production of their tax returns. I find that it would be premature for me to rule now on whether production of the tax returns is required. A proper ruling on that issue should be deferred until we see what other documents the Binetters produce and how essential the tax returns are to the liquidator in light of the rest of the production. Therefore, for that part of the liquidator's motion, I will defer decision.

Second, the Binetters have invoked their Fifth Amendment privilege—in particular, the "act of production" doctrine, which relieves a party from the obligation to produce documents when the very act of production could be incriminating. I understand the parties have agreed to a process for presenting these Fifth Amendment privilege issues to me, which they will present to me in the form of a proposed order.

Third, the Binetters have made an overbreadth objection. As noted above, the Binetters have not produced a single document to date. In light of that, I find it is appropriate to deny the overbreadth objection and to order the Binetters to produce all documents within their possession, custody or control, subject only to (i) their objections to production of tax returns and privileged documents, and (ii) a specific showing that particular requests are unduly burdensome. To the extent the Binetters wish to press objections of the latter sort, the parties are directed to meet and confer, consistent with my ruling, to try to resolve any such issues before bringing those disputes

to me.

Finally, the Binetters argued in their motion papers that the liquidator's discovery requests amounted to an abuse of process, though they did not press this argument at the hearing. I find that this objection lacks merit. It is a novel objection, and as a general matter, I am not sure there's any legal basis for an objection of this sort. (The Binetters cite none.) It is clear that there's no basis for this objection here, given my finding that the requested discovery, on the whole, is entirely appropriate.

### <u>Conclusion</u>

For these reasons, the liquidator's motion to compel is granted to the extent set forth above. The parties are directed to settle and submit a proposed order reflecting my ruling.

Dated: New York, New York
      March 10, 2025

<u>/s/ Philip Bentley</u>
**Hon. Philip Bentley**
**United States Bankruptcy Judge**