UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

B.C.I. FINANCES PTY LIMITED (In Liquidation), *et al.*,

      Debtors in Foreign Proceedings.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FOR PUBLICATION**

Chapter 15

Case No. 17-11266 (PB)
(Jointly administered)

**MODIFIED BENCH RULING GRANTING MOTION OF DEBTOR ACN 078 881 035
PTY LIMITED FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND
RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

**APPEARANCES:**

MAYER BROWN LLP
*Attorneys for Foreign Representative*
1221 Avenue of the Americas
New York, NY 10019
By: Glen A. Kopp
    Joaquin M. C. DeBaca

OLSHAN FROME WOLOSKY LLP
*Attorneys for Binetter Parties*
1325 Avenue of the Americas
New York, NY 10019
By: Jonathan T. Koevary
    Andrew Lustigman

UNITED STATES DEPARTMENT OF JUSTICE
*United States Trustee*
Alexander Hamilton Custom House
New York, NY 10004
By: Mark Bruh


**Philip Bentley**
**U.S. Bankruptcy Judge**

1

# Introduction[1]

The issue before the Court is whether to follow the rule, uniformly applied by bankruptcy courts in this District and elsewhere, that a chapter 15 debtor's creation of an attorney retainer in the United States at the outset of its case satisfies the eligibility requirements of Bankruptcy Code § 109(a). Members of the Binetter family, who owned and managed the debtor before the commencement of its Australian liquidation proceedings, ask the Court to reject this settled rule on the ground that it permits such an easy end-run around section 109(a)'s property requirement—that debtors without a residence or place of business in the United States must have "property in the United States"—that it essentially nullifies that requirement. This result, they argue, contravenes basic canons of statutory construction and permits improper manipulation of the statute's requirements. On this ground, they ask the Court to rule that the debtor, whose only U.S. property is an attorney retainer, is ineligible to file under chapter 15.

The Binetters' argument is not without some force. If the mere creation of an attorney retainer suffices to satisfy section 109(a), then virtually any well-counseled company in the world—including one with no U.S. connections whatsoever—will be able meet the section's eligibility requirements, thereby stripping those requirements of any real teeth. It makes little sense, the Binetters contend, for Congress to have created requirements that are so easily satisfied.

This may be true, but it does not warrant the relief the Binetters request: judicial modification of section 109(a) to give the provision teeth that Congress chose not to give it. As all courts that have addressed this issue have held, the text of section 109(a)'s property requirement is unambiguous: It requires only that the debtor have *some* property in the United States, no matter

---

[1] This decision memorializes and expands upon the bench ruling that the Court read into the record at the conclusion of the May 8, 2025 recognition hearing.

2

how small and no matter when or why acquired. To modify an unambiguous statutory provision such as this, the Court would need to find that it produces an absurd result. And that is not the case here: Far from producing a result that Congress could not possibly have intended, a literal reading of section 109(a) furthers a number of chapter 15's core purposes, while undermining none of them. Consequently, no basis exists to modify the section's plain terms or to find that steps taken by a debtor to comply with those terms constitute impermissible manipulation. The settled rule that a debtor's creation of an attorney retainer in the United States satisfies section 109(a) is well-founded, and the Court will follow it.

### Factual and Procedural Background

This case, filed by debtor ACN 078 881 035 Pty Limited (formerly Shield Holdings Australia Pty Limited) (the "Debtor"), is the latest chapter in the long-running saga of the Binetter family and its once-thriving international beverage empire. As chronicled in the Court's recent decision, *In re B.C.I. Finances Pty Ltd (in Liquidation)*, 668 B.R. 51, 53-55 (2025), the Binetters emigrated from Europe to Australia in the 1950s and proceeded to build a number of successful businesses, including an international beverage business by the name of Nudie Juice. For many years, these businesses prospered and grew. The family employed a complex corporate structure to manage the businesses from their headquarters in Australia.

The family's empire eventually crumbled, after evidence surfaced that the Binetters had engaged in a 20-plus-year tax evasion scheme. In or about 2014, the Australian Tax Office levied tax assessments in excess of AU $100 million against four of the Binetters' companies, finding they had entered into purported lending arrangements with Israeli banks and for decades had fraudulently reported nonexistent interest expense on their Australian tax returns. The Australian courts appointed Mr. John Sheahan to serve as the liquidator for these four companies. On their

3

behalf, he brought suit and obtained judgments of more than $100 million against Binetter family members and a number of their other companies. In 2018, six additional Binetter companies went into liquidation in Australia, and Mr. Sheahan was appointed as their liquidator. In 2024, an eleventh Binetter company—the Debtor—commenced liquidation proceedings in Australia. In January 2025, the Australian court overseeing that liquidation appointed Mr. Sheahan as the Debtor's special purpose liquidator, with authority to take discovery in any foreign jurisdiction for the purpose of identifying the Debtor's assets and investigating its potential claims against third parties.[2]

Beginning in 2017, Mr. Sheahan filed successive chapter 15 petitions in this Court on behalf of the various Binetter companies for which he was appointed liquidator (collectively, the "Binetter Debtors"). He filed the first four of these chapter 15 petitions in 2017, after learning that two members of the Binetter family had moved to the United States. In 2021, he filed chapter 15 petitions for six more Binetter Debtors, and in March 2025, he filed a chapter 15 petition for the Debtor. In each of these cases, Mr. Sheahan serves as the debtor's foreign representative. In each case, he stated that his principal reason for filing under chapter 15 was to take discovery in the United States, so as to identify Binetter family assets located here and to investigate potential claims against parties in the U.S. that may have participated in the Binetters' tax evasion, diversion of assets or other misconduct. The chapter 15 cases of all 11 Binetter Debtors have been consolidated for administrative, but not substantive, purposes.

The petition that Mr. Sheahan filed on behalf of the Debtor in March 2025 seeks

---

[2] The Binetters opposed Mr. Sheahan's appointment, contending that it would empower him to take burdensome discovery as to potential claims against them that might eventually be found to be barred by the terms of a 2018 settlement. The Australian court rejected this argument, ruling that it was important that Mr. Sheahan be allowed to take discovery without delay, given the prospect that statutes of limitations may expire and that "the investigative trail will continue to cool." *See In re B.C.I. Finances*, 668 B.R. at 57-58 (discussing Jan. 9, 2025 decision of Justice Cheeseman in *Ligon 158 Pty Limited (in liq) v. Shield Holdings Australia Pty Ltd (in liq)*, FCA 3 NSD 10023/2022, at ¶¶ 46-49).

4

recognition of the Debtor's Australian liquidation proceeding, as well as related relief. The only parties that objected to the motion were three members of the Binetter family. A hearing on the motion was held on May 8, 2025, at which time the Binetters withdrew all of their objections except their argument that the Debtor is not eligible to be a debtor under Code § 109(a). No live testimony was given at the May 8 hearing. Instead, the parties agreed to proceed on the basis of the paper record, consisting of the Debtor's petition, Mr. Sheahan's declaration, and the various supporting documents.

Other than the disputed issue of eligibility under section 109(a), there is no dispute that Mr. Sheahan, as the Debtor's foreign representative, has satisfied the various requirements of the Bankruptcy Code for recognition and related relief, including the requirements set forth in Code §§ 1507, 1517, 1520, and 1521. The Court finds that, for the reasons set forth in Mr. Sheahan's declaration and other motion papers, those requirements are satisfied; among other things, Mr. Sheahan is a proper foreign representative, the Debtor's Australian liquidation proceeding is a foreign main proceeding, and the related relief Mr. Sheahan seeks is warranted. Because those issues are undisputed and straightforward, this decision will address only the section 109(a) issue.

## Discussion

Bankruptcy Code § 109(a) provides: "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." In *Drawbridge Special Opportunities Fund LP v. Barnet* (*In re Barnet*), 737 F.3d 238, 247-51 (2d Cir. 2013) ("*Barnet*"), the Second Circuit held that section 109(a) applies to chapter 15, as well as to other chapters of the Bankruptcy Code. Although some commentators have criticized that decision, *see, e.g.*, D. Glosband & J. Westbrook, *Chapter 15 Recognition in the U.S.: Is a Debtor "Presence" Required?*, 24 Int. Insolv. Rev. 28–

5

Pg 6 of 16

56 (2015) ("*Chapter 15 Recognition*") [https://perma.cc/D59D-SPGM], and the court of appeals of one other circuit has declined to follow it, *see Al Zawawi v. Diss (In re Al Zawawi)*, 97 F.4th 1244 (11th Cir. 2024) (continuing to follow contrary rule adopted under Bankruptcy Act), *Barnet* remains the law of this Circuit.

It is undisputed that the Debtor does not have a residence, domicile or place of business in the United States. Its sole basis for claiming to satisfy section 109(a) is that it has property in the U.S.—specifically, the retainer account that it created at a New York City bank at the outset of this chapter 15 case to cover a portion of its lawyers' fees. The Binetters contend that a property interest of this sort is insufficient to satisfy Code § 109(a)'s requirement that the Debtor have property in the U.S.

The Binetters acknowledge that the courts have uniformly rejected the rule they advocate. Indeed, this Court previously granted recognition in each of the Binetter Debtors' ten prior chapter 15 cases, finding each time that the foreign representative's legal retainer in New York was sufficient to satisfy section 109(a). In 2018, Judge Sean Lane, who presided over these cases before they were transferred to me two years ago, considered the Binetters' arguments and rejected them based on a comprehensive review of the case law. *See In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 293-96 (Bankr. S.D.N.Y. 2018); *see also In re B.C.I. Finances Pty Ltd.*, Case No. 17–11266, January 18, 2022 (SHL) (ECF No. 89) (reiterating Court's prior ruling on this issue).

As Judge Lane found, the case law on this issue was uniform at the time of his 2018 decision. Each court that had addressed the issue had ruled that a chapter 15 debtor's creation of a retainer in the U.S. to pay the fees of its chapter 15 counsel was sufficient to satisfy section 109(a). *See B.C.I. Finances*, 583 B.R. at 293–94 (citing *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017); *In re Poymanov*, 571 B.R. 24, 29 (Bankr. S.D.N.Y. 2017); *In re Inversora*

6

*Electrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016); *In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 411–13 (Bankr. S.D.N.Y. 2014); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373–74 (Bankr. S.D.N.Y. 2014)).

The law on this issue continues to be uniform. Each court that has addressed the issue since 2018 has come to the same conclusion. *See, e.g., In re Agro Santino, OOD*, 653 B.R. 79, 88 (Bankr. S.D.N.Y. 2023); *In re Olinda Star Ltd.*, 614 B.R. 28, 39-40 (Bankr. S.D.N.Y. 2020); *In re Serviços de Petróleo Constellation*, 613 B.R. 497, 504-05 (Bankr. S.D.N.Y. 2019); *In re Ascot Fund Ltd.*, 603 B.R. 271, 277 (Bankr. S.D.N.Y. 2019).

The Binetters ask the Court to reject this settled rule on the ground that it makes section 109(a)'s eligibility requirements so easy to circumvent that it essentially nullifies those requirements. The Binetters contend that this result contravenes basic statutory construction principles and allows debtors to improperly manipulate section 109(a)'s eligibility requirements. We address these two arguments in turn.

1. **The Binetters' contention that a literal reading of Code § 109(a) effectively nullifies that section's eligibility requirements in contravention of the canon against surplusage**

The Binetters contend that permitting an attorney retainer to satisfy section 109(a) makes that section's "property in the United States" requirement so easy to satisfy that it is tantamount to no requirement at all. As a result, they claim, this rule violates the "cardinal principle of statutory construction" that courts should "give effect, if possible, to every clause and word of a statute," so as to avoid treating any statutory term as mere "surplusage." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations and internal quotations omitted).

The flaw in this argument is that the canon against surplusage, like the other statutory

7

construction canons, is a principle that guides the courts' interpretation of *ambiguous* statutory provisions, not provisions whose meaning is plain. The Second Circuit has repeatedly so held. *See, e.g., Auburn Housing Authority v. Martinez*, 277 F.3d 138, 143 (2d Cir. 2002) (Katzmann, J.) ("*If the meaning of the statute is ambiguous*, the court may resort to canons of statutory interpretation to help resolve the ambiguity.") (emphasis added); *id.* at 146 ("a statute must, *if reasonably possible*, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless") (citation and internal quotation omitted) (emphasis added); *U.S. v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000) (Jacobs, J.) ("Because [the parties] each rely on a reasonable meaning of [the provision in question], we resort to the canons of statutory interpretation to help resolve the ambiguity"); *cf. Duncan v. Walker*, 533 U.S. at 174 (employing surplusage canon to construe ambiguous statutory provision).

The surplusage canon thus has no application here, because as the courts have uniformly held, the text of section 109(a) is unambiguous. As noted, Code § 109(a) provides: "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or *property in the United States*, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a) (emphasis added). Notably absent from this provision is any qualification of the "property in the United States" requirement. For example, there is no requirement that the debtor have any minimum amount of property in the U.S. or that the debtor have owned its U.S. property for any minimum length of time. Nor does the section contain any restriction on the circumstances in which the debtor acquired its U.S. property, such as an exclusion for property acquired in connection with the chapter 15 case. Section 109(a) merely requires that the debtor have property—some property, no matter how small and no matter when or why acquired—in the U.S. at the time it files its petition. An attorney retainer created shortly before the chapter 15 filing

8

satisfies this requirement.

The conclusion that section 109(a) is unambiguous does not change when one considers that section in its statutory context, as basic interpretative canons require. *See, e.g., Barnet,* 737 F.3d at 250 ("In determining whether statutory language is ambiguous, we reference the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.") (quotations and citations omitted). The Binetters identify no conflict between section 109(a)'s plain meaning and any other specific Bankruptcy Code provision, nor with any of the purposes of chapter 15 or of the Code as a whole.

Consequently, the courts are required to apply section 109(a) as written, unless doing so would produce an absurd result. "It is an 'exceptionally rare occurrence' for a court to conclude that a result is so absurd that a legislature cannot have meant what it said in a statute's text." *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 217 (S.D.N.Y. 2020) (internal citations omitted). Such a conclusion is warranted only "where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone.'" *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 517 (2d Cir. 2017) (quoting *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470–71 (1989) (Kennedy, J., concurring)); *see also Dubroff v. First Nat'l Bank (In re Dubroff)*, 119 F.3d 75, 76 (2d Cir. 1997) (statute's plain meaning should be set aside only when necessary to avoid "manifestly" absurd results). It is not sufficient that the statute, as written, "produces results that a court or litigant finds anomalous or perhaps unwise." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019).

The Binetters' contention that the plain text of section 109(a) produces absurd results does not surmount this high bar. To be sure, it serves little purpose to create a requirement that virtually

9

any company can satisfy by the simple expedient of creating a retainer shortly before filing. If section 109(a) were ambiguous, its toothlessness might warrant the adoption of an alternative interpretation with teeth. But being toothless does not warrant setting aside the provision on absurdity grounds unless it is "quite impossible that Congress could have intended [this] result," *Catskill Mountains*, 846 F.3d at 517—an "exceptionally rare occurrence," *Mendez Ramirez*, 612 F. Supp. 3d at 217.

Does section 109(a), as written, produce a result that Congress could not possibly have intended? Not at all. To the contrary, it is eminently plausible that Congress meant to set an extremely low bar to chapter 15 eligibility—a bar so low that virtually any well-counseled company in the world can surmount it—while at the same time giving bankruptcy courts broad discretion to decline to exercise jurisdiction, or to tailor the relief they grant, when the circumstances warrant.[3]

Indeed, an approach of this sort furthers the core objectives of chapter 15. As expressly stated in chapter 15's "Purpose" section, Code § 1501(a), these objectives include cooperation between U.S. and foreign courts, the fair and efficient administration of cross-border insolvencies so as to protect the interests of creditors and other interested parties, and the protection and maximization of the value of the debtor's assets. *See* 11 U.S.C. § 1501(a)(1), (3), & (4).

Permitting chapter 15 filings by companies without either a residence or any known property in the United States, other than a retainer, furthers these purposes in multiple ways. For

---

[3] As Judge Lane noted in his 2018 decision, this approach is consistent with how courts have interpreted section 109(a) in chapter 11 cases filed by foreign companies. *See B.C.I. Finances*, 583 B.R. at 294. Courts have long found foreign companies to be eligible to file under chapter 11 so long as they have at least a minimal amount of property, such as an attorney retainer or a bank account, in the United States. *See id.; see also, e.g., In re Yukos Oil Co.*, 321 B.R. 396 (Bankr. S.D. Tex. 2005) (retainer for U.S. bankruptcy counsel); *In re Global Ocean Carriers, Ltd.*, 251 B.R. 31 (Bankr. D. Del. 2000) (same, plus small U.S. bank account). Of course, chapter 11 cases filed by debtors with minimal U.S. connections must still pass muster under other bankruptcy doctrines, including abstention under Code § 305(a)(1) and dismissal on bad faith grounds.

10

instance, many such companies have a pressing need for the automatic stay protections that chapter 15 affords. *See* Bankruptcy Code § 1520(a)(1) (automatic stay protects debtor and its property within the U.S. upon recognition of foreign main proceeding); *id.* § 1519(a)(1) (court may impose stay prior to recognition when "urgently needed"). For example:

- Some debtors with no U.S. residence or property have U.S. dollar-denominated debt, often subject to New York forum selection and governing law clauses. Even without any U.S. assets, these debtors may need the automatic stay to prevent lawsuits on that debt from interfering with their foreign restructuring efforts.

- Other debtors with no U.S. residence or property are defendants in U.S. litigation of other sorts. Absent a stay, these suits could result in judgments that plaintiffs could enforce against the debtor's non-U.S. assets.

- Still other debtors with no known U.S. property on the petition date have unknown U.S. assets that may subsequently be identified through discovery taken in the chapter 15 case. Other debtors have transient assets that are likely to enter the U.S. at future times, such as funds moving through international banks or ships traveling in international waters.

In each of these instances, the automatic stay protects the debtor's assets from piecemeal attachment or seizure, thereby preserving the assets for distribution in accordance with the priorities established in the foreign reorganization or liquidation.

In addition, as this case illustrates, the discovery provisions of chapter 15 can be important to debtors with no U.S. residence or assets. *See* Code § 1521(a)(4) (permitting discovery "concerning the debtor's assets, affairs, rights, obligations or liabilities"). Absent recognition under chapter 15, the plain terms of Bankruptcy Code §§ 1509(b) and (c) appear to bar a foreign

11

representative from requesting discovery from any district court or state court in the United States.[4] And even if 28 U.S.C. § 1782 could be read to override that bar and authorize discovery by a foreign representative, discovery under section 1782 is subject to significant limitations. In the first place, such discovery is discretionary. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (U.S. 2004) ("§ 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance."). Moreover, even when permitted, discovery under section 1782 is often narrower in scope than under Bankruptcy Code § 1521(a)(4): Section 1782 allows discovery only "for use in a proceeding in a foreign or international tribunal," in contrast to the wide-ranging discovery permitted under section 1521(a)(4) concerning the debtor's business dealings, assets and potential causes of action, *see, e.g., In re Markus*, 607 B.R. 379, 390 (Bankr. S.D.N.Y. 2019) (noting that "[b]road discovery under section 1521 promotes a significant chapter 15 objective"), *aff'd in part, vacated in part, remanded sub nom. Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020).

For these and other reasons, the protections and powers afforded by chapter 15 are needed by many debtors that have no U.S. residence or property, and allowing such debtors to file under chapter 15 furthers the statutory objectives noted above—namely, cooperation between U.S. and

---

[4] Bankruptcy Code §§ 1509(b) and (c) provide that a foreign representative cannot seek relief in a U.S. court without first obtaining recognition of the foreign proceeding. *See* 11 U.S.C. § 1509(b)(2) ("If the court grants recognition under section 1517, . . . the foreign representative may apply directly to a court in the United States for appropriate relief"); *see also id*. § 1509(b)(3), (c). As the House Report for chapter 15 explains, "Subsections (b)(2), (b)(3), and (c) make it clear that Chapter 15 is intended to be the exclusive door to ancillary assistance to foreign proceedings." H.R. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. (2005) at 110. These provisions, specific to foreign *insolvency* proceedings, *see* Code § 101(23) (defining "foreign proceeding" as a reorganization or liquidation proceeding), appear to create an exception to the general power of a district court to order discovery in aid of (other) foreign proceedings pursuant 28 U.S.C. § 1782. *See generally* Glosband & Westbrook, *Chapter 15 Recognition* [https://perma.cc/D59D-SPGM], at 23-24.

In *Barnet*, the Second Circuit seemed to overlook the carveout for foreign representatives created by Bankruptcy Code § 1509, stating in passing that "28 U.S.C. § 1782(a) provides for discovery in aid of foreign proceedings without any requirement akin to Section 109(a)." *Barnet*, 737 F.3d at 251. The court's decision makes no mention of Code § 1509, and it is unclear whether the parties had brought that section's provisions to the court's attention.

12

foreign courts, fair and efficient cross-border administration, and maximization of the value of the debtor's assets, *see* 11 U.S.C. § 1501(a)(1), (3), & (4). The present case illustrates the important role chapter 15's discovery provisions can play in furthering these goals. If this case were dismissed on eligibility grounds, the Debtor might well be barred by Code §§ 1509(b) and (c) from taking any discovery in the U.S., despite the ruling of the Australian court overseeing the Debtor's liquidation that such discovery should proceed without delay (*see* fn. 2 above). Such a result would be antithetical to all three of the chapter 15 objectives just noted.

A final, but equally critical, consideration is that a plain meaning interpretation of section 109(a), so as to permit chapter 15 filings by debtors with no U.S. residence and no U.S. property except an attorney retainer, does not undermine the chapter's purposes in any significant way. To be sure, some chapter 15 cases are improvidently filed, and some chapter 15 debtors seek relief contrary to the interests of creditors or other parties-in-interest. But the Court is aware of no reason to believe such abuses are any more common among debtors without a residence or property in the U.S. than among debtors with such property. And in any event, chapter 15 gives bankruptcy courts ample tools to manage cases that do not serve the chapter's purposes. For example, Code § 305 authorizes the court to abstain from hearing a chapter 15 case, after entry of a recognition order, if "the purposes of chapter 15 . . . would be best served by such dismissal or suspension." 11 U.S.C. § 305(a)(2).[5] And even absent abstention or dismissal on other grounds, bankruptcy courts are free—indeed, required—to deny relief that would be contrary to the interests of creditors or other affected parties. *See, e.g.*, Code § 1522(a) (court may grant relief under section 1519 or

---

[5] Some courts have held that held that 28 U.S.C. § 1334(c)(1) prohibits bankruptcy courts from abstaining in chapter 15 cases. *See, e.g., Firefighters' Retirement Sys. v. Citco Group Ltd.*, 796 F. 3d 520 (5th Cir. 2015); *In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. 543 (Bankr. S.D.N.Y. 2015). However, most of these decisions make no mention of Code § 305(a)(2), and some commentators have suggested that the decisions are contrary to the intent of chapter 15's drafters. *See* National Bankruptcy Conference Letter to Congress re: Revisions to Chapter 15 of the Bankruptcy Code, at 17 (Aug. 20, 2018) [https://perma.cc/E8XT-KLL6].

1521 "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected"); Code § 1521(a) (court may grant additional relief only "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors"). At oral argument, the Court pressed the Binetters' counsel to identify any purpose of chapter 15 that might be disserved by a literal reading of section 109(a), and he was unable to do so.

**2. The Binetters' argument that a literal reading of Code § 109(a) invites improper manipulation**

The Binetters' contention that a debtor's creation of an attorney retainer for the purpose of satisfying § 109(a)'s eligibility requirements amounts to an impermissible manipulation fails for similar reasons. Putting aside the absence of any evidence as to the Debtor's reasons for creating the attorney retainer (*i.e.*, whether it did so for independent business reasons), the Binetters identify no legal basis to invalidate actions that are taken to comply with a statute's plain terms and that further, rather than undermine, the statute's purposes.

The Binetters point to the Second Circuit's comprehensive discussion, in *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127 (2d Cir. 2013), of the standards to determine the location of a chapter 15 debtor's center of main interests, or "COMI," a key element in deciding whether to recognize a foreign main proceeding. *See* Bankruptcy Code § 1517(b)(1). As the Binetters note, the court's discussion gives significant weight to the need "to ensure that a debtor has not manipulated its COMI in bad faith." *Id.*, 714 F.3d at 137. But as the Second Circuit explained, the need to protect against COMI manipulation is rooted in the very term "center of main interests," which is derived from European legal sources indicating that COMI should correspond to the debtor's regular and ascertainable place of business. *See Fairfield Sentry*, 714 F.3d at 136-38. Thus, judicial safeguards against maneuvers to shift a debtor's COMI

give effect to that statutory language and prevent manipulation that would undermine its purposes. In contrast, the rule the Binetters ask the Court to adopt would both contravene section 109(a)'s plain language and frustrate, rather than further, chapter 15's purposes.

The Binetters also cite *In re Patriot Coal Corp.*, 482 B.R. 718 (Bankr. S.D.N.Y. 2012), as a supposed example of a bankruptcy court's refusal to let parties "create facts" to satisfy a statute's requirements. But that case, too, is entirely consistent with the Court's ruling. The debtors there had filed about 100 chapter 11 cases in this District, even though they had no meaningful business presence here. To comply with the bankruptcy venue statute, 28 U.S.C. § 1408, the Debtors incorporated two of their 98 subsidiaries in New York on the eve of their filing. *Id.* at 726-27, 741. Judge Chapman found that this maneuver "elevate[d] form over substance in a way that would be an affront to the purpose of the bankruptcy venue statute and the integrity of the bankruptcy system." *Id.* at 744; *see also id.* at 746 ("the Debtors created facts in order to satisfy the statute"). The court nevertheless ruled that, by these actions, the debtors satisfied the venue statute, *id.* at 741—a ruling directly contrary to the Binetters' contention that statutory compliance obtained through "manipulative" means should be disregarded.

To be sure, the court in *Patriot Coal* transferred the debtors' bankruptcy cases to St. Louis, where the debtors were headquartered. But it did not do so by grafting unwritten requirements onto the venue statute. Instead, the court relied on a different statute—the bankruptcy venue transfer statute, 28 U.S.C. § 1412—which, unlike section 1408, expressly authorizes the transfer of bankruptcy cases to other districts when doing so is "in the interest of justice or for the convenience of the parties." *Id.* at 743-46. So too, in the chapter 15 context, the courts have ample statutory tools to dispose of or otherwise manage improvidently-filed cases, *see, e.g.,* Bankruptcy Code §§ 305(a)(2), 1522(a), without the need to distort the plain terms of the Code § 109(a)'s eligibility

15

requirements.

## Conclusion

For these reasons, the Court DENIES the Binetters' objection and GRANTS the foreign representative's motion for an order granting recognition and related relief.

Dated: July 8, 2025
New York, New York

                                         /s/ Philip Bentley
                                         **Hon. Philip Bentley**
                                         **United States Bankruptcy Judge**