**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re:                                                      NOT FOR PUBLICATION

B.C.I. FINANCES PTY LIMITED (In                             Chapter 15
   Liquidation), *et al.*,
                                                            Case No. 17-11266 (SAB)
Debtor in Foreign Proceedings.[1]
                                                            (Jointly Administered)

------------------------------------------------------------X

## DECISION AND ORDER DENYING MOTION FOR STAY PENDING APPEAL

**HONORABLE SHIREEN A. BARDAY**
**UNITED STATES BANKRUPTCY JUDGE**

Michael Binetter, through counsel, submitted his *Motion for Stay Pending Appeal of May 26, 2026 Order Granting Motion to Compel and Denying Motion for Protective Order* (ECF No. 275, "Motion for Stay"), seeking a stay pending his appeal of this Court's Order, dated May 26, 2026 (ECF No. 272, "Order to Compel"), pursuant to the corresponding *Memorandum Opinion Granting the Motion to Compel and Denying the Motion for Protective Order*, dated May 26, 2026 (ECF No. 271, the "Opinion Granting Motion to Compel"), in which the Court ruled that Michael Binetter must respond to the Foreign Representative's discovery requests notwithstanding his Fifth Amendment objections and directed JP Morgan Chase Bank, N.A. ("JPMorgan") to comply with the Foreign Representative's August 11, 2025 subpoena. The Foreign Representative objects to the Motion for Stay. For the reasons set forth below, the Motion for Stay is DENIED.

---

[1] The Foreign Debtors in the underlying Chapter 15 cases are the following eleven entities (the last four digits of their respective corporation identification numbers follow in parentheses): (i) B.C.I. Finances Pty Limited (8531); (ii) Binqld Finances Pty Limited (3220); (iii) E.G.L. Development (Canberra) Pty Limited (7646); (iv) Ligon 268 Pty Limited (4081) (collectively, (i)–(iv), the "Prior Foreign Debtors"); (v) Gerobin Finances Pty Ltd (6410); (vi) Erbin Finances Pty Ltd (9800); (vii) Rawbin Finances Pty Ltd (6549); (viii) Marbin Finances Pty Ltd (2970); (ix) Erma Nominees Pty Ltd (7040); (x) Ligon 158 Pty Ltd (4015); and (xi) ACN 078 881 035 Pty Limited (collectively, (v)–(xi) (1035), the "New Foreign Debtors," and, together with the Prior Foreign Debtors, the "Foreign Debtors").

1

## BACKGROUND

**Memorandum Opinion**

The facts relevant to this matter are set forth in this Court's Opinion Granting Motion to Compel.[2]  The Court assumes familiarity with the Opinion Granting Motion to Compel, the Opinion Granting Motion to Compel is incorporated herein by reference, and capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Opinion Granting Motion to Compel.

**The District Court Appeals and the Instant Motion for Stay**

On June 3, 2025, Andrew Binetter, his wife, Samantha Kelliher, and his brother, Michael Binetter (collectively, the "Binetters") filed a Notice of Appeal (ECF No. 193, the "Original Appeal") of the recognition of the New Foreign Debtors' chapter 15 cases.  The Original Appeal has been fully briefed and remains pending before Judge Edgardo Ramos in the United States District Court for the Southern District of New York (the "District Court"), under case number 25-cv-4815. On May 27, 2026, Michael Binetter filed a Notice of Appeal (ECF No. 274, the "Instant Appeal") from the Order to Compel to the District Court, which appeal was also assigned to Judge Ramos under case number 26-cv-4542.

On May 27, 2026, this Court held a status conference regarding the preservation obligations under the *Order Granting Motion to Stay Discovery* (ECF No. 268), as to Andrew Binetter and Samantha Kelliher.  At the May 27, 2026, status conference, Michael Binetter noticed the Court as to the imminent filing of his Motion for Stay.  On May 28, 2026, Michael Binetter filed the instant Motion for Stay; on June 15, 2026, the Foreign Representative filed his opposition (ECF No. 283, the "Opposition to Motion for Stay"); and, on June 22, 2026, Michael Binetter submitted his reply

---

[2] *In re B.C.I. Finances Pty Ltd. (In Liquidation)*, -- B.R. --, 2026 WL 1480366 (Bankr. S.D.N.Y. May 26, 2026).

papers to the Opposition to Motion for Stay (ECF No. 285, the "Reply").  This Court heard oral argument on the Motion for Stay on June 24, 2026 (the "Hearing").  Following oral argument, Michael Binetter submitted supplemental briefing on the narrow issue of whether a foreign tax scheme is sufficient to serve as a predicate act under 18 U.S.C. § 1956 or 18 U.S.C. § 1957 (ECF No. 288) to which the Foreign Representative responded on June 30, 2026 (ECF No. 289).

## DISCUSSION

**Legal Standard**

Federal Rule of Bankruptcy Procedure 8007 governs an application for a stay pending appeal from a bankruptcy court's decision.  "Ordinarily, a party must move first in the bankruptcy court for the following relief: (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal . . . ." Fed. R. Bankr. P. 8007(a)(1).  The decision as to whether to grant a stay of an order pending appeal lies within the sound discretion of the bankruptcy court. *Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC (In re Sabine Oil & Gas Corp.)*, 551 B.R. 132, 142 (Bankr. S.D.N.Y. 2016).  To determine whether to grant a stay, bankruptcy courts consider the following factors: (i) whether the movant will suffer irreparable injury absent a stay; (ii) whether a party will suffer substantial injury if a stay is issued; (iii) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and (iv) the public interests that may be affected.  *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (citing *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993)); *see Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted).  A stay pending appeal under Rule 8007 is "the exception, not the rule," and the party seeking a stay "carries a heavy burden." *Carrington v. Lamonica* (*In re Carrington*), 698 F. Supp. 3d 659, 661 (S.D.N.Y. 2023) (quotations omitted), *dismissing appeal*, Case Nos. 24-197, 23-7433, 2024 WL 3491202 (2d Cir. May 3, 2024).  The "most critical" factors are a strong showing

3

that appellant is likely to succeed on the merits and irreparable injured absent a stay. *See Nken*, 556 U.S. at 434. The Second Circuit has often treated the stay inquiry as a balancing of factors rather than a checkmark exercise as to each independent factor. *In re Adelphia*, 361 B.R. at 347; *see In re 473 W. End Realty Corp.*, 507 B.R. 496, 502 (Bankr. S.D.N.Y. 2014) (quoting the Sixth Circuit for the proposition that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay," in other words, more of one factor excuses less of the other). Here, regardless of how the scales are balanced or rebalanced, Michael Binetter falls short of the requisite showing.

**Likelihood of Success on the Merits**

Michael Binetter advances several arguments in his Motion for Stay, which can be grouped into two primary categories: first, that this Court erred in finding a waiver where none occurred; and second, that this Court imposed too stringent requirements for invoking Fifth Amendment privilege. Both sets of arguments misapprehend the law and cannot be reconciled with the factual record and arguments actually and timely raised before this Court. As a result, Michael Binetter has failed to demonstrate that he has any likelihood of success on the merits of his appeal.

In the first instance, as to Michael Binetter's bank statements, this Court held that Michael Binetter's attempt to invoke the Fifth Amendment act of production privilege as to specific transactions contained in his bank statements could not be sustained where Michael Binetter had already ***voluntarily produced*** copies of his bank statements, undercutting the element of compulsion prerequisite to ***any*** assertion of act of production privilege under the Fifth Amendment.[3] Crucially, this voluntary production, which occurred on April 28, 2025, ***more than thirteen months ago***,

---

[3] Notably, the word waiver only appears twice in the twenty-five page Opinion Granting Motion to Compel, with strict relation cabined to Michael Binetter's failure to brief the JPMorgan issue at all, constituting a waiver of any argument related thereto.

resolved questions as to the existence, custody, and authenticity of those bank statements—the testimonial component of the act of producing documents and the core of what the Fifth Amendment act of production privilege protects. Michael Binetter now argues that this holding misapplied the law because he never personally, knowingly, voluntarily, or affirmatively waived his Fifth Amendment privilege rights (only his counsel's actions arguably did so), but the Second Circuit has long held that a knowing, voluntary and intelligent waiver is not the legal standard applied to waivers of act of production privilege because the "privilege is not self-executing." *See In re DG Acquisition Corp.*, 151 F.3d 75, 80 (2d Cir. 1998) (expressly stating that act of production privilege may be deemed waived "by litigation conduct short of a knowing and intelligent waiver" (citation and quotation omitted)). While Michael Binetter places significant weight on the presumption against a finding of waiver, that argument misses the mark: this Court's holding as to Michael Binetter's obligation to produce his bank statements did not rest on that basis.

Further, Michael Binetter seems to take the position through his argument that no action of his counsel could *ever* effect a waiver of his Fifth Amendment act of production privilege— suggesting that he must personally announce a waiver in order for it to be operative. Mot. for Stay ¶ ¶ 41, 43. This assertion finds no refuge in case law. *See In re DG Acquisition Corp.*, 151 F.3d at 80. And, most important, Michael Binetter has *never* submitted written or oral testimony to this Court in any form contending that his counsel was unauthorized to undertake any of the actions on his behalf, including by producing any of the documents that have been produced thus far in response to the Foreign Representative's subpoena. To the contrary, the only evidence submitted to the Court on this point is an email from counsel to counsel stating that "Mr. Binetter insists on reviewing every document before it gets produced." Kopp Decl. Ex. F at 1. Counsel for Mr. Binetter has never

5

disavowed this statement and, if true, it suggests that Michael Binetter knew his bank statements were to be produced and authorized their production.

Michael Binetter's waiver arguments are also unavailing insofar as they are based on a belated disagreement with previously undisputed facts. That is, counsel for Michael Binetter now argues that Michael Binetter's bank statements were never produced as part of discovery. As a factual matter, that appears to be incorrect. The record before this Court indicates that Michael Binetter's bank statements **were** introduced in these proceedings when they were produced by his counsel through a **Track 1 document production only** and, in fact, have never been submitted by his counsel (or directly by Michael Binetter) to the Court for any *in camera* review as counsel now suggests.[4] Instead, representative copies of Michael Binetter's bank statements later submitted to the Court through the Track 2 Fifth Amendment dispute resolution process by the Foreign Representative (not counsel for Michael Binetter)—neither Michael Binetter nor his counsel ever objected to the submission of the bank statements in connection with Track 2. *See* ECF No. 239, Ex. B. (Representative Sample of Michael Binetter's Produced Bank Statements). Thus, Michael Binetter's argument that counsel's actions cannot effect a waiver of Fifth Amendment act of production privilege (presumably regardless of whether those actions are authorized or not) rests largely on his mischaracterization of relevant facts insofar as he relies upon the notion that his counsel only ever produced copies of the bank statements as part of a "tactical" submission in connection with the Track 2 process.

It is clear as a matter of fact, however, that the voluntary production of documents occurred through Track 1 in the first instance, as evidenced by, among other things, the production cover letter

---

[4] For the sake of clarity, it bears mention that "in camera" is used to refer to a process that excluded the general public from accessing any filings made pursuant to the Track 2 process at issue in this case; however, the in camera review process (Track 2) was not conducted on an ex parte basis and, relevant here, counsel for Michael Binetter agreed that assertions of Fifth Amendment privilege would be done on notice to the Foreign Representative

provided by counsel for Michael Binetter in connection with the document production containing the bank statements.  That letter stated that the documents contained in the *April 28, 2025 production* were being produced "[p]ursuant to the Order Granting Foreign Representative's Motion to Enforce the Rule 2004 Order to Compel the Binetters to Produce Documents Responsive to Rule 2004 Subpoenas [Dkt. No. 169] and the Protective Order [Dkt. No. 171] both entered on March 10, 2025."[5]  At the Hearing, counsel for Michael Binetter emphasized their rigorous document review process and, notably, Michael Binetter's bank statements appear to have been the only documents marked for disclosure to the Foreign Representative that included redactions, severely undercutting any latent inadvertent disclosure argument—since the act of redacting itself is a deliberate act.  A general order compelling the production of nonspecific documents responsive to a subpoena is not the same as an order compelling the production of specific documents.  For these same reasons, a resulting determination to select specific documents deemed responsive to a generalized order therefore cannot be considered compelled, but instead constitutes a voluntary production that eviscerates any claim of Fifth Amendment act of production privilege where, as here, the production is testimonial as to the existence, custody, and authenticity of the documents.

Notably, Michael Binetter also has never sought to appeal the Production Order, which required the production of documents (Track 1) in the first place.  Instead, he now raises a number of arguments that are charitably characterized as attempting to say that no production of documents through the Track 2 process under the Procedures Order can constitute a waiver.  While no law squarely supporting this contention has been interposed in support of Michael Binetter's Motion for Stay, the fact is that, when Michael Binetter voluntarily produced the documents revealing himself as the account owner of JPMorgan bank accounts, pursuant to a Production Order (Track

---

[5] Specific transactions within the bank statements were cited as redacted pursuant to Michael Binetter's assertion of the Fifth Amendment act of production privilege.

1) and not the Procedures Order (Track 2), and this action rendered the existence, custody, and authenticity of those statements a foregone conclusion: the Fifth Amendment no longer shields their production. *See Benthos Master Fund, Ltd. v. Etra*, 2023 WL 4350594, at \*15 (S.D.N.Y. July 5, 2023).

Michael Binetter's reliance on *United States v. Greenfield* does not alter this conclusion. 831 F.3d 106 (2d Cir. 2016). The foregone conclusion doctrine, as applied in *Greenfield*, presupposed that the act of production privilege has been otherwise validly invoked; it then asks whether the government can demonstrate, with reasonable particularity, that the existence, control, and authenticity of the requested documents are already known, with each element assessed independently. *Id*. at 116. *Greenfield* thus does not stand for the proposition that a party who has already voluntarily produced documents may invoke the act of production privilege as to their contents; it addresses the narrower question of what the government must show to overcome a privilege that has been properly asserted in the first place. Here, the act of production privilege did not attach for reasons wholly independent of the foregone conclusion doctrine: Michael Binetter's voluntary production, made before any order required it, defeated the privilege at the threshold by rendering the elements of existence, custody, and authenticity no longer testimonial. The foregone conclusion doctrine was therefore not the basis for an exception to an otherwise valid privilege claim; it was confirmatory of a conclusion already compelled by the record.

Regarding JPMorgan's obligation to comply with the Foreign Representative's subpoena, Michael Binetter has failed to refute the core principle that forecloses his argument: he has no Fifth Amendment privilege over JPMorgan's own business records. In any event, Michael Binetter failed to address this argument in this first instance, either by raising it affirmatively (i.e., through his Motion for a Protective Order) or by raising it defensively (i.e., in response to the Foreign

8

Representative's Motion to Compel), so it has been waived. *See United States v. Feliciano*, 223 F.3d 102, 125 (2d Cir. 2000). Moreover, this is the second time a challenge to a third-party production has been made by Michael Binetter and, as this Court explained previously in a reasoned bench decision, the Fifth Amendment cannot be raised derivatively on behalf of a third party. Adv. No. 26-01004, ECF No. 8 (Transcript of Hearing), ECF No. 9 (Order).[6] Michael Binetter offers no coherent basis on which this Court could intervene to prevent JPMorgan from complying with a validly served subpoena: while he concedes that, as a general matter, the Fifth Amendment does not apply to corporations like JP Morgan, he argues that where, as here, an individual raises a dispute as to whether the Fifth Amendment allows for redactions of information contained in corporate third-party documents, the Fifth Amendment intervenes to prohibit compliance with a subpoena served on a corporate third-party. This argument is supported by no case law but it is also counterintuitive at best: even if the redacted transactions were subject to an act of production privilege, the selectively redacted bank statements disclosed (without redactions) the bank's identity, the account holder's name, and the last four digits of the relevant account numbers so it is unclear why a dispute over the redaction of other information would intervene to halt compliance with a subpoena that was served based upon unredacted details in those documents.

As to the Australian Court Documents, this Court concludes Michael Binetter has failed to set forth satisfactory evidence necessary to demonstrate any likelihood of success on the merits. As a threshold matter, this Court did not impose any burden on Michael Binetter to identify a

---

[6] Michael Binetter cites *Gazzola v. Hochul* for the proposition that the Foreign Representative cannot indirectly ask JPMorgan for what it could not request from Michael Binetter himself, yet the anti-circumvention principle that case espouses arose in a Second Amendment context and does not translate to the act of production privilege, where the personal nature of the right means a third-party custodian's own records are simply not protected. 88 F.4th 186 (2d Cir. 2023)

specific crime, investigation, or prosecution pending against him in order to invoke the Fifth Amendment act of production privilege as to the Australian Court Documents. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Instead, this Court relied on well-established standards that require the invocation of Fifth Amendment act of production privilege to be done on something more than merely conclusory terms, which is all that was contained in the briefing submitted on behalf of Michael Binetter in support of his motion for a protective order and in opposition to the Foreign Representative's motion to compel. *See Camelot Grp., Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221, 1224 (S.D.N.Y. 1980). In articulating the applicable legal standard and explaining the deficiencies in Mr. Binetter's argument on this point, by way of non-exclusive illustrative examples, the Court noted that, in light of (i) the particular facts of this case, where a reasonable fear of prosecution was not clear on its face, (ii) the age of the documents relative to the applicable statutes of limitations, (iii) the fact that several documents were authored by third-parties (and, in fact, may be business records created by third-parties), (iv) the absence of any criminal prosecution or investigation even in Australia where the conduct principally occurred, and (v) the Foreign Representative's independent awareness of each of the documents because he was a party to Australian proceedings, a fact Michael Binetter conceded at the Hearing, the onus was on Michael Binetter to tip the needle in some, even slight manner to meet his burden that his fear was indeed real, rather than remote and speculative. While the examples the Court provided would have certainly been sufficient, they were illustrative only and their outright absence, coupled with the peculiar facts of this case, only confirmed the absence of a reasonable fear of prosecution. (This conclusion is not academic: not only do the atmospheric and contextual facts not support a conclusion of a reasonable fear of prosecution in the United States but Michael Binetter has himself never submitted testimony to this Court such as testimony stating under oath, for example, that he

has any fear of prosecution whatsoever, so there was not even a conclusory statement from the individual purporting to invoke the privilege on which this Court could credibly rely in presuming that Michael Binetter had met his burden.)

Finally, as to the nexus between Australian civil tax fraud and criminality in the United States, Counsel for Michael Binetter now contends that Mr. Binetter actually did make the requisite showing—not from briefing, but from counsel's statements at oral argument. At oral argument on the Motion for a Protective Order, Michael Binetter raised for the first time the argument that his conduct could support a federal money laundering charge under 18 U.S.C. § 1956, stating that foreign unlawful activity can constitute a predicate under American law for a money laundering charge. Hearing Tr. 79:21-23; 80:12-24 ("You can be convicted of money laundering, [with] . . . the underlying offense being tax fraud"). Because this argument was the closest Michael Binetter has come to articulating a nexus between the foreign civil tax fraud and criminality in the United States, this Court allowed the parties to submit supplemental briefing on the issue. *See* ECF Nos. 288 (Michael Binetter), 289 (Foreign Representative).

Having reviewed the supplemental briefs submitted by each party, the Court concludes that Mr. Binetter's most recent argument remains insufficient to support an invocation of the Fifth Amendment act of production privilege. As the Foreign Representative has cogently explained in his Opposition to Motion for Stay as well as his supplemental brief, tax evasion is conspicuously absent from the enumerated list of specified unlawful activities that can serve as predicates for a money laundering charge under § 1956(c)(7).[7] Moreover, while wire fraud can serve as the specified unlawful activity for a money laundering charge, under well-settled law, the wire fraud

---

[7] Further, Michael Binetter's references now raised in his Motion to Stay to the federal wire fraud and bank fraud statutes, 18 U.S.C. §§ 1343, 1344, cannot carry the day either, as those statutes do not apply extraterritorially, *Bascuñán v. Elsaca,* 927 F.3d 108, 121-24 (2d Cir. 2019).

must be "sufficiently domestic" to do so. *United States v. Prevezon Holdings, Ltd.*, 122 F. Supp. 3d 57, 70-71 (S.D.N.Y. 2015) (holding that "all elements of the wire fraud" must have been "completed in the United States or while crossing U.S. borders"). There is no question that the facts at issue here fail to satisfy that standard. Michael Binetter nevertheless asserts that a lower standard for culpability under Section 1957 applies; he argues that "§ 1957 has a lower mens rea threshold" and "Wire fraud does not require a domestic 'scheme'—only that U.S. wires were used." Reply ¶ 4. However, even crediting Mr. Binetter's articulation of the legal standard, no one has contended that U.S. wires were ever used by Michael Binetter in connection with the tax fraud scheme in Australia and so it is difficult to see how this new argument could materially tip the likelihood of success on the merits, even if it had been timely raised.

Moreover, Michael Binetter's supplemental briefing submitted after the Hearing fails to rectify the deficiency of his position. In his supplemental brief, Michael Binetter argues that foreign tax fraud can serve as a predicate for a U.S. money laundering charge by routing it through the wire fraud or mail fraud statutes, relying principally on *Pasquantino v. United States*, 544 U.S. 349 (2005). But this argument does not advance his position in any meaningful respect. As Michael Binetter's own supplemental briefing concedes, foreign tax evasion is not itself a specified unlawful activity under § 1956(c)(7), and a money laundering charge predicated on foreign tax fraud can only proceed where the foreign fraud was executed through U.S. mails or wires, giving rise to a mail or wire fraud predicate, or where it falls within one of the enumerated foreign offense categories under § 1956(c)(7)(B). Here, Michael Binetter has never identified, let alone demonstrated, any use of U.S. mails or wires in connection with the Australian tax fraud scheme, nor has he pointed to any facts suggesting the conduct falls within an enumerated foreign offense

category.  Accordingly, Michael Binetter has failed to show that he is likely to succeed on the merits of any of his arguments on appeal.[8]

**Irreparable Injury**

Because Michael Binetter has failed to show any likelihood of success on the merits of his appeal, it follows that there can be no irreparable harm from the denial of a stay.  *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007) (defining irreparable harm as a harm that is neither remote nor speculative but rather actual and imminent).  That is, while the mere invocation of a constitutional right generally satisfies the evidentiary showing necessary to satisfy this factor, there is no constitutional injury that will befall Michael Binetter absent a stay.  More specifically, the irreparable harm factor is fundamentally undermined here by a fact Michael Binetter cannot overcome: the testimonial harm that the act of production privilege is designed to prevent ***has already occurred***.  The act of production privilege protects against testimonial assertions implicit in production: that the documents exist, are in the producer's possession or control, and are authentic.  *United States v. Fox*, 721 F.2d 32, 36 (2d Cir. 1983).  Michael Binetter communicated those facts to the Foreign Representative when he voluntarily produced hundreds of pages of his JPMorgan statements in April 2025.  Whatever testimonial harm the privilege was designed to guard against therefore came to pass at that moment, and a stay cannot undo a disclosure that has already occurred.  Because the compelled production of the unredacted bank statements would not add to the ***testimonial*** communication Michael Binetter already willingly made through his prior production, the additional reveal of further transactional content cannot properly be construed as inflicting irreparable harm that a stay could avert.  *See In re Mongiello, 2024 WL 729865, at *2*

---

[8] The parties dispute whether any of the orders entered by this Court are appealable as final or instead are nonappealable as interlocutory.  This Court's analysis assumes arguendo that jurisdiction to appeal exists but, even still, Michael Binetter fails to satisfy the requirements for a stay pending appeal, because his arguments are legally meritless, untimely, and/or at odds with the factual record in this matter.

*n.3* (S.D.N.Y. Feb. 22, 2024) ("[T]hat . . . [an] appeal may be rendered moot in the absence of a stay is not a bar to finding that the imminent injury factor weighs against [the movant].") And, for the reasons set forth above, Michael Binetter is unable to derivatively invoke the Fifth Amendment on JP Morgan's behalf—because the Fifth Amendment act of production privilege does not apply to corporate third parties and Michael Binetter himself already produced copies of the bank statements that led to the subpoena served on JPMorgan.

Finally, with respect to the Australian Court Documents, Michael Binetter concedes that the Foreign Representative is already aware of them through his participation in the Australian proceedings. The prospect of producing records whose existence and contents are already known to the requesting party cannot constitute the type of irreparable harm that would justify a stay. (In fact, their production does not implicate the Fifth Amendment because their existence is a foregone conclusion.) Michael Binetter counters that general awareness of the documents' existence is not the same as specific knowledge of which documents are in his possession, and that compelling production would force him to authenticate and confirm custody thereby providing new testimonial evidence. Where, as here, the opposing party either already possesses or has ready access to the documents at issue, a fact Michael Binetter conceded at the Hearing, compelling their production from Mr. Binetter adds no meaningful testimonial increment, a conclusion that is only bolstered by the lack of any evidence from which a reasonable fear of prosecution could be credibly inferred. Accordingly, Michael Binetter has failed to establish irreparable harm absent a stay.

**Injury to the Other Party**

Contrary to Michael Binetter's position, a stay pending appeal would present cognizable harm to the Foreign Representative. This matter has been pending for nearly a decade and has been (and continues to be) mired in discovery disputes, including instances of the same arguments lacking

a strong merits foundation having been recycled more than once, which suggests that these disputes may have been interposed, at least in part, to cause delay and frustrate the asset tracing exercise of the Foreign Representative.  A stay of this Court's order would perpetuate these delays without a concomitant upside given the Court's conclusion that the appeal fails to raise even a serious question as to the merits.  The Court's March 10, 2025 Order already contains the factual predicate of potential harm should discovery not proceed: the cooling investigative trail and tens of millions in potential recoveries that may be lost.  Accordingly, Michael Binetter has not made a sufficient showing regarding the lack of injury to the nonmoving party.

**Public Interest**

Finally, both the public interest in the expeditious resolution of disputes and the principle of international comity, which is foundational to Chapter 15 proceedings, weigh against granting the Motion to Stay.  *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 368 n.163 (S.D.N.Y. 2007) (The "public interest favors the expedient administration of the bankruptcy proceedings.") (internal quotations and citations omitted); 11 U.S.C. § 1501(a) (providing that the purpose of Chapter 15 proceedings is to provide an effective mechanism for dealing with cases of cross-border insolvency in a fair and *efficient* manner).  Of course, there is also a strong public interest in protecting constitutional rights, but because Michael Binetter has failed to show how his constitutional rights have been infringed, or how he could prevail on appeal with respect to his arguments, the public interest weighs in favor of denying the Motion to Stay.  *See Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 49 (2d Cir. 2020) (Where "likelihood of success [is] totally lacking, the aggregate assessment of the factors bearing on issuance of a stay pending appeal cannot possibly support a stay.")  That interest is most powerful where a stay could still avert an impending constitutional violation.  Where, as here, the testimonial harm the privilege was designed to prevent

15

has already occurred at the willing hands of the moving party, belated regret for that decision cannot tip the scales in favor of a stay. This is particularly true where, as here, there is an absence of a likelihood of success on the merits (or even a serious question as to the merits), and granting a stay would not vindicate any constitutional right; it would simply delay proceedings this Court has already determined were devoid of any constitutional impropriety.

## CONCLUSION

For the reasons stated, Michael Binetter's Motion for Stay is DENIED, including the alternative request for a two-week administrative stay raised in the Reply.[9] To the extent Michael Binetter separately seeks an injunction pursuant to Bankruptcy Rule 8007(a)(1)(C), that request is denied for the same reasons. While the injunction standard is marginally less demanding, requiring a showing of "either a likelihood of success or serious issues going to the merits" rather than a substantial possibility of success, Michael Binetter has failed to satisfy even that lower threshold. *See In re LATAM Airlines Grp. S.A.*, 2022 WL 2657345, at *14 n.20 (Bankr. S.D.N.Y. July 8, 2022). As set forth above, his arguments misapprehend the law and cannot be reconciled with the factual record, and he has not demonstrated serious issues going to the merits of any of the three categories of documents at issue. Because he fails on the merits prong, and because the remaining factors: irreparable harm, injury to the opposing party, and the public interest, all weigh against relief for the reasons already stated, the injunction request fails on the same grounds as the stay.

Date: June 30, 2026
New York, New York

/s/ *Shireen A. Barday*
**HONORABLE SHIREEN A. BARDAY**
**UNITED STATES BANKRUPTCY JUDGE**

---

[9] The Foreign Representative also requests that any stay be conditioned on the posting of a bond. Because the Court denies the Motion for Stay, the bond question is moot.

16