**ASHURST PERKINS COIE UK LLP**
55 Hudson Yards, 18th Floor
New York, New York 10001
Mark Dendinger
Tel.: (212) 205-7029
Fax: (212) 409-8236
*Counsel to John Sheahan, as Liquidator and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>B.C.I. FINANCES PTY LIMITED (In Liquidation), *et al.*,<br><br>Debtor in Foreign Proceedings.[1] | Chapter 15<br><br>Case No. 17-11266 (SAB)<br><br>(Jointly Administered) |

**THE FOREIGN REPRESENTATIVE'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO ENFORCE THE RULE 2004 ORDER AND SUBPOENAS AND TO COMPEL ANDREW BINETTER AND SAMANTHA KELLIHER TO PRODUCE DOCUMENTS THROUGH A VENDOR-ADMINISTERED, COUNSEL-REVIEWED PROCESS, AND IN OPPOSITION TO THE BINETTER PARTIES' CROSS-REQUEST FOR FEES AND COSTS**

[1] The Foreign Debtors in these chapter 15 cases are the following 11 entities (the last four digits of their respective corporation identification numbers, if any, follow in parentheses): (i) B.C.I. Finances Pty Limited (8531); (ii) Binqld Finances Pty Limited (3220); (iii) E.G.L. Development (Canberra) Pty Limited (7646); (iv) Ligon 268 Pty Limited (4081) (collectively (i) – (iv), the "Prior Foreign Debtors"); (v) Gerobin Finances Pty Ltd (6410); (vi) Erbin Finances Pty Ltd (9800); (vii) Rawbin Finances Pty Ltd (6549); (viii) Marbin Finances Pty Ltd (2970); (ix) Erma Nominees Pty Ltd (7040); (x) Ligon 158 Pty Ltd (4015) (collectively, (v) – (x) the "New Foreign Debtors"); and (xi) ACN 078 881 035 Pty Limited (1035) ("Shield") (collectively, (i) – (xi) the "Foreign Debtors").

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. THE AUGUST 27 ORDER RESERVES, RATHER THAN FORECLOSES, THE RELIEF REQUESTED ........ 3

A. Paragraph 5 Expressly Preserves "Any Relief" Concerning the Binetter Parties' Response to the Subpoenas ........ 3

B. The Order Does Not Make Self-Collection Exclusive or Displace the Binetter Parties' Production Obligations ........ 4

C. The Opposition's Settlement-Enforcement Authorities Are Inapposite ........ 5

D. Rule 60(b) Does Not Apply, and the Record Has Changed in Any Event ........ 7

II. THE APPLETON DECLARATION AND THE REST OF THE RECORD CONFIRM THAT THE SELF-DIRECTED PROCESS IS INADEQUATE ........ 8

A. The Appleton Declaration Is Unsupported and Undercuts the Opposition ........ 8

B. The Opposition Does Not Rebut the Authorities Requiring Counsel-Directed Collection and Transparency ........ 9

III. RULES 26 AND 45 SUPPORT, RATHER THAN BAR, THE REQUESTED RELIEF 11

IV. THE REQUEST CONCERNING MICHAEL BINETTER IS LIMITED AND APPROPRIATE ........ 12

V. THE OPPOSITION'S NEW REQUESTS FOR FEES, SANCTIONS, AND DECLARATORY RELIEF SHOULD BE DENIED ........ 13

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**CASES**

*A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*,
407 F.3d 65 (2d Cir. 2005)....................6

*Acon v. Long Island Gay & Lesbian Youth, Inc.*,
No. 21-CV-4642 (WFK)(CLP), 2023 WL 12073648 (E.D.N.Y. July 7, 2023)....................9

*Agee v. Paramount Commc'ns, Inc.*,
114 F.3d 395 (2d Cir. 1997)....................14

*AMF, Inc. v. Brunswick Corp.*,
621 F. Supp. 456 (E.D.N.Y. 1985)....................5

*Berger v. Heckler*,
771 F.2d 1556 (2d Cir. 1985)....................2, 3, 4, 6

*Brown v. Barnes & Noble, Inc.*,
474 F. Supp. 3d 637 (S.D.N.Y. 2019)....................12

*Calvin Klein Ltd. v. Trylon Trucking Corp.*,
892 F.2d 191 (2d Cir. 1989)....................5

*Data Collective II, L.P. v. Baron Cap. Mgmt. Inc.*,
No. 25-MC-00057 (JAV), 2025 WL 1380122 (S.D.N.Y. May 13, 2025)....................13

*Doe v. Columbia Univ.*,
No. 25-cv-02132 (DEH)(RFT), 2026 WL 1345937 (S.D.N.Y. May 13, 2026)....................11, 14

*Grullon v. Lewis*,
No. 24-CV-04892 (VEC)(SN), 2025 WL 1693425 (S.D.N.Y. June 17, 2025)....................9

*Herman v. City of New York*,
334 F.R.D. 377 (E.D.N.Y. 2020)....................9

*In re Ames Dep't Stores, Inc.*,
76 F.3d 66 (2d Cir. 1996)....................15

*In re B.C.I. Fin. Pty Ltd.*,
No. 17-11266 (SAB), 2026 WL 1895587 (Bankr. S.D.N.Y. June 30, 2026)....................1, 10, 15

*In re B.C.I. Fin. Pty Ltd. (In Liquidation)*,
681 B.R. 21 (Bankr. S.D.N.Y. 2026)....................1, 10

*In re Correra*,
589 B.R. 76 (Bankr. N.D. Tex. 2018)....................10

*In re Emanuel*,
422 B.R. 453 (Bankr. S.D.N.Y. 2010) ........ 15

*In re First Am. Corp.*,
184 F.R.D. 234 (S.D.N.Y. 1998) ........ 11

*In re Residential Capital, LLC*,
480 B.R. 529 (Bankr. S.D.N.Y. 2012) ........ 11

*Katel Ltd. Liab. Co. v. AT&T Corp.*,
607 F.3d 60 (2d Cir. 2010) ........ 3, 4, 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........ 6

*Matter of B.C.I. Fin. Pty Ltd. (in Liquidation)*,
668 B.R. 51 (Bankr. S.D.N.Y. 2025) ........ passim

*Mazzocchi v. Windsor Owners Corp.*,
No. 11 Civ. 7913 (AT), 2014 WL 594085 (S.D.N.Y. Feb. 11, 2014) ........ 13

*McCoy v. Feinman*,
99 N.Y.2d 295 (2002) ........ 5, 7

*Mentus v. Gallina Dev. Corp.*,
No. 6:25-CV-06122 (EAW) (CDH), 2025 WL 3088926 (W.D.N.Y. Nov. 5, 2025) ........ 13

*Nat'l Day Laborer Org. Network v. U.S. Immig. & Customs Enf't Agency*,
877 F. Supp. 2d 87 (S.D.N.Y. 2012) ........ 9

*Omega Eng'g, Inc. v. Omega, S.A.*,
432 F.3d 437 (2d Cir. 2005) ........ 5

*Powell v. Omnicom*,
497 F.3d 124 (2d Cir. 2007) ........ 5

*Rigsby v. Hyundai Motors*,
780 F. Supp. 3d 417 (W.D.N.Y. 2025) ........ 5

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) ........ 15

*Saint-Jean v. Emigrant Mortg. Co.*,
No. 11-CV-2122 (SJ), 2015 WL 13735434 (E.D.N.Y. Oct. 7, 2015) ........ 14

*Shafii v. British Airways, PLC*,
83 F.3d 566 (2d Cir. 1996) ........ 14

*Sprint Commc'ns Co. v. Jasco Trading, Inc.*,
5 F. Supp. 3d 323 (E.D.N.Y. 2014) ....................5

*Torres v. Walker*,
356 F.3d 238 (2d Cir. 2004)....................6

*Treppel v. Biovail Corp.*,
249 F.R.D. 111 (S.D.N.Y. 2008) ....................10

*United States v. Int'l Bhd. of Teamsters*,
247 F.3d 370 (2d Cir. 2001)....................7

**STATUTES AND RULES**

28 U.S.C. § 1927....................3, 15

Bankruptcy Rule 9016 ....................12, 13

Bankruptcy Rule 9024 ....................7

Fed. R. Civ. P. 26(b)(2)(C)(i) ....................11

Fed. R. Civ. P. 37....................13

Fed. R. Civ. P. 37(a)(5)(B) ....................13

Fed. R. Civ. P. 45....................4, 12, 13

Fed. R. Civ. P. 45(d)(1)....................14

Fed. R. Civ. P. 45(d)(2)(B)(i) ....................4, 12

Fed. R. Civ. P. 45(d)(2)(B)(ii) ....................4, 11, 12

Fed. R. Civ. P. 60(b) ....................7

## PRELIMINARY STATEMENT

This matter "has been pending for nearly a decade and has been (and continues to be) mired in discovery disputes." *In re B.C.I. Fin. Pty Ltd.*, No. 17-11266 (SAB), 2026 WL 1895587, at *7 (Bankr. S.D.N.Y. June 30, 2026) (the "Stay Opinion"). More than four years after the Rule 2004 Order, nearly three years after the Subpoenas were served, and more than eight weeks after the stay was lifted, Andrew Binetter ("Mr. Binetter") and Samantha Kelliher (together, the "Binetter Parties") have produced no documents. Opp. ¶¶ 7–8, 37; Appleton Decl. Ex. A.[2] They first "refused to produce a single responsive document," *Matter of B.C.I. Fin. Pty Ltd. (in Liquidation)*, 668 B.R. 51, 55 (Bankr. S.D.N.Y. 2025) ("*BCI II*"); then, on the day their court-ordered production came due, sought more time; then sought to assert a Fifth Amendment privilege over asset-tracing discovery; and then obtained a stay. *In re B.C.I. Fin. Pty Ltd. (In Liquidation)*, 681 B.R. 21, 26, 30–32, 34 n.10 (Bankr. S.D.N.Y. 2026) (the "Fifth Amendment Opinion"). The self-directed process now in place—in which they choose the sources, run the searches, and decide what is "potentially responsive," while barring a vendor or even their own counsel from collecting or searching their data—is the latest chapter in that history. Mot. at 7–8, 14, 18–20.

The Binetter Parties have now agreed to run the Foreign Representative's derivative search terms, Opp. ¶ 7—but only after he discovered that they had been manually searching only for the entities' full names. They still will not say how those terms, which depend on wildcards and Boolean connectors, are being executed. And the Opposition ignores the decisions holding that custodians may not collect and judge the responsiveness of their own documents. Mot. at 15–17.

---

[2] Capitalized terms not defined herein have the meanings given in the Foreign Representative's Motion (ECF No. 314-1, the "Motion" or "Mot."). "Opp." refers to the Binetter Parties' Opposition, and "Appleton Decl." refers to the Declaration of Robert M. Appleton submitted with it. "10/6 Tr." refers to the October 6, 2026 hearing transcript (Dendinger Decl. Ex. E), and "8/26 Tr." to the August 26, 2026 hearing transcript (Dendinger Decl. Ex. A).

Instead, the Opposition recasts the August 27, 2026 discovery order (the "Order" or the "August 27 Order"; ECF No. 304) as a settlement contract that bars the Court from addressing the manner of compliance. Paragraph 5 says otherwise: absent agreement, "a motion to the Court shall be made and this Order is without prejudice to any relief that may be sought by either the Binetter Parties or the Foreign Representative concerning the Binetter Parties' response to the Subpoenas." August 27 Order ¶ 5. The Binetter Parties' counsel wrote that if the Foreign Representative has concerns with the terms of the prior discovery agreement the Foreign Representative's "remedy is a motion on notice," following which the Court invited this motion. Dendinger Decl. Ex. G at 4; *id.* 10/6 Tr. at 20:1–21. *Berger v. Heckler*, the root of the Opposition's argument that the Order should be enforced as if it is a contract is inapplicable as it involved affirmance of a court's amendment of a consent decree to secure compliance with it and not an order on how to structure the response to a discovery subpoena.

The Appleton Declaration does not fill the gap. Its single attached letter reports that counsel is now reviewing approximately 600 documents—confirming that responsive material exists in volume, that the earlier exact-name searches missed much of it, and that the process is far from complete. Appleton Decl. Ex. A at 1; Opp. ¶ 7. As of this filing, still no documents have been produced.

The Opposition also misstates the record. The Motion was not filed "less than six weeks" after the August 26 hearing (Opp. at 2); it was filed fifty-one days later, ten days after the Court said that "what you are left with is motion practice." 10/6 Tr. at 20:7–12. It asserts that "sums of money were properly and lawfully returned to the Binetter Parties" (Opp. ¶ 9); in fact, frozen funds were divided under a negotiated settlement. Michael Binetter's production was not completed "years ago" (Opp. ¶¶ 33, 60); his most recent tranche of almost 1,400 pages was produced in

August. The Motion does not seek to "reopen" that production (Opp. ¶¶ 47–48, 60); it asks only what search terms were used and what sources were searched, particularly relevant due to how the Binetter Parties have been conducting their searches. Together, these misstatements paint a materially misleading picture.

Finally, the cross-request for fees should be denied. A motion that the Court invited, that the governing order contemplates, and that opposing counsel called the proper remedy is substantially justified, and nothing here approaches the bad faith required for sanctions under the Court's inherent power or 28 U.S.C. § 1927.

## ARGUMENT

## I. THE AUGUST 27 ORDER RESERVES, RATHER THAN FORECLOSES, THE RELIEF REQUESTED

### A. Paragraph 5 Expressly Preserves "Any Relief" Concerning the Binetter Parties' Response to the Subpoenas

Under the Binetter Parties' own authorities, an agreed instrument is read according to "the plain meaning of the language employed," giving "full meaning and effect to all of its provisions," *Katel Ltd. Liab. Co. v. AT&T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010) (citations omitted), and an instrument's scope "must be discerned within its four corners," *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) (citation omitted). Paragraph 5 provides that "[i]f they cannot agree, a motion to the Court shall be made" and that "this Order is without prejudice to any relief that may be sought by either the Binetter Parties or the Foreign Representative concerning the Binetter Parties' response to the Subpoenas." August 27 Order ¶ 5. The Opposition reads the final clause as if it is limited solely to "any relief concerning the number of weekly hours." Opp. ¶ 28. But earlier in the same paragraph the parties referred specifically to "the time to be devoted to the review process," August 27 Order ¶ 5; for the without-prejudice clause, they chose broader words: "any relief"

"concerning the Binetter Parties' response to the Subpoenas." Reading that clause as a restatement of the hours mechanism would deprive it of independent effect. *Katel*, 607 F.3d at 64.

Nor does this reading render paragraphs 2 through 4 "illusory." Opp. ¶ 28. They govern unless and until the Court orders otherwise on a motion made after the parties fail to agree—which is what "without prejudice" means. The Binetter Parties understood as much when they told the Foreign Representative that his "remedy is a motion on notice." Dendinger Decl. Ex. G at 4. Their attempt to recast that statement as an objection to amendment by letter (Opp. ¶ 29) cannot be squared with its words.

### B. The Order Does Not Make Self-Collection Exclusive or Displace the Binetter Parties' Production Obligations

The Opposition treats the Binetter Parties' own first-pass review as a settled term, and its table treats the Order's silence on a vendor, a completion date, and search methodology as a negotiated prohibition. Opp. ¶¶ 17, 22. That is a tortured reading of paragraph 2. Paragraph 2 requires the Binetter Parties to "undertake document review . . . by contributing 3.5 hours per week collectively" to identify responsive materials. August 27 Order ¶ 2. It fixes the time they must personally contribute; it says nothing about who collects their data, whether counsel or a vendor may search it, or whether they may exclude their own counsel from collection and first-level review. The "self-conducted first-pass review" appears nowhere in the Order; the Opposition derives it from a single remark by counsel. Opp. ¶ 2 (citing 8/26 Tr. at 8:6–8). A court may not "expand or contract the agreement of the parties," *Berger*, 771 F.2d at 1568, and silence is not prohibition. Nor does the Order displace the directive to produce "all documents within their possession, custody or control." *BCI II*, 668 B.R. at 60. The Motion asks the Court to direct how those obligations will be discharged, Mot. at 12, as Rule 45 permits. Fed. R. Civ. P. 45(d)(2)(B)(i)–(ii).

The Binetter Parties are not in "full compliance." Opp. ¶ 37. Paragraph 4 requires rolling production "as soon as practicable," and the Court has observed that it "contemplated that there would be a production on the horizon. And it sounds like maybe there isn't." 10/6 Tr. at 15:20–21. Roughly 600 documents are now under review with no production date. Opp. ¶ 7. That is not compliance.

### C. The Opposition's Settlement-Enforcement Authorities Are Inapposite

Every contract case the Opposition cites involved an agreement that resolved claims or fixed facts or sums owed—not an interim order governing the mechanics of ongoing discovery. *See, e.g.*, *Powell v. Omnicom*, 497 F.3d 124, 127–28 (2d Cir. 2007) (plaintiff with "the legal equivalent of buyer's remorse" sought to reopen settled case); *Rigsby v. Hyundai Motors*, 780 F. Supp. 3d 417, 421–23 (W.D.N.Y. 2025) (plaintiff had cashed settlement check); *Sprint Commc'ns Co. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 331–32 (E.D.N.Y. 2014) (refusing to enforce asserted oral settlement); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445–46 (2d Cir. 2005) (enforcing settlement of trademark action against party whose principals declined to sign it); *AMF, Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 461–62 (E.D.N.Y. 1985) (enforcing dispute-resolution provision of settlement that ended advertising litigation); *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 194 (2d Cir. 1989) (stipulation of fact as to limitation of liability); *McCoy v. Feinman*, 99 N.Y.2d 295, 302 (2002) (stipulation of settlement in divorce action). None involved discovery, and none involved an order that, like paragraph 5, preserves "any relief" on the very subject the order governs and provides for that relief to be sought by motion. Discovery orders are revisited as discovery unfolds, and this one says so. Nor did the August 27 Order release anything: the Rule 2004 Order and the Subpoenas remain in force. The Foreign Representative does not seek to escape the August 27 Order; he seeks the relief paragraph 5 preserves.

*Berger* supports the Motion. There, after finding non-compliance with a consent decree, the district court amended the decree to secure compliance, and the Second Circuit affirmed. 771 F.2d at 1568–69. The sentence the Opposition quotes—that a party who has obtained a decree's benefits "cannot then be permitted to ignore such affirmative obligations as were imposed by the decree," *id.*—applies to the party that has not produced. And the cases cited in the Opposition confirm the Court's authority under paragraph 8 to address "the implementation, interpretation, and enforcement" of the Order; they do not limit it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (where parties' obligations are made part of the court's order, "a breach of the agreement would be a violation of the order"); *Torres v. Walker*, 356 F.3d 238, 243 (2d Cir. 2004) (quoting *Kokkonen*); *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 78 (2d Cir. 2005) (same).

The supposed "admissions" of the Foreign Representative's counsel (Opp. ¶¶ 11, 20–21) accurately describe the Order: it refers to 3.5 hours and contains a "mechanic" for adjustment. 10/6 Tr. at 12:13–15, 13:4–6. Describing the Order is not conceding that it forecloses relief it expressly reserves—particularly when counsel asked, at the same conference, that time be reserved for this Motion. And the October 9 proposal was the attempt at agreement paragraph 5 contemplates; the Binetter Parties rejected it "in full." Dendinger Decl. Ex. G at 1.[3]

Nor was there any "bait-and-switch." Opp. at 2–3, ¶ 59. The Order directed that production "begin on a rolling basis as soon as practicable," August 27 Order ¶ 4, and contemplated that, before the October 6 conference, the Binetter Parties would identify any materials they intended to withhold on Fifth Amendment grounds, *id.* ¶ 6. The Court voiced concern on August 26 "that

[3] On October 29, the Foreign Representative again offered to negotiate a consensual form of order; the Binetter Parties declined and stood on their request for fees.

we're going to get to October 30th, and we're not going to have substantively responsive documents produced." 8/26 Tr. at 8:22–24. That concern has been borne out. On October 6, counsel estimated a first production by the end of the month; a week later, counsel reported that no responsive, non-privileged document had been identified; and roughly 600 documents are now under review—still with nothing produced. 10/6 Tr. at 17:9–14; Dendinger Decl. Ex. G at 6; Appleton Decl. Ex. A at 1. The Foreign Representative did not agree to lift the stay in exchange for a lengthy process that yields no documents. If the Binetter Parties had that in mind, the switch was theirs.

**D. Rule 60(b) Does Not Apply, and the Record Has Changed in Any Event**

The Opposition argues that relief is available only under Rule 60(b), made applicable by Bankruptcy Rule 9024. Opp. ¶¶ 32–34. Rule 60(b) governs relief "from a final judgment, order or proceeding." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (quoting Fed. R. Civ. P. 60(b)). The August 27 Order is an interlocutory case-management order in an ongoing Rule 2004 process, and it supplies its own mechanism for further relief. The "good cause" standard on which the Opposition relies is likewise addressed to a party seeking to be relieved of a stipulation that resolved the merits. *See Katel*, 607 F.3d at 65–66 (party bound by stipulation fixing amount owed); *McCoy v. Feinman*, 99 N.Y.2d at 302 (stipulation of settlement in divorce action). The Foreign Representative seeks relief the Order itself provides.

In any event, the Opposition is wrong that "[e]verything in [the Foreign Representative's] papers was known on August 26." Opp. ¶ 33. On August 26, counsel described a process in which counsel would conduct "a review with our clients once they've done their initial pass." 8/26 Tr. at 8:6–8. On October 6, counsel reported that the Binetter Parties "are not allowing Olshan to search the computer media or her records or anything she's imaged" and have refused counsel's offers of assistance. 10/6 Tr. at 15:23–16:2, 16:11–12. Nor was it known that the searches would use only

exact entity names, that the Binetter Parties would refuse to disclose how search terms are executed, or that eight weeks would pass without a production. Mot. at 7–10. The change in circumstances is not new counsel (Opp. ¶ 34); it is the record.

## II. THE APPLETON DECLARATION AND THE REST OF THE RECORD CONFIRM THAT THE SELF-DIRECTED PROCESS IS INADEQUATE

### A. The Appleton Declaration Is Unsupported and Undercuts the Opposition

The Court invited the Binetter Parties to "substantiate their claim that what they're doing is appropriate." 10/6 Tr. at 20:17–21. Their only evidence is a four-paragraph declaration from counsel who identifies himself as "counsel for Michael Binetter," attaching a letter he wrote. Appleton Decl. ¶¶ 1, 3. It does not purport to rest on personal knowledge of the searches, and neither Ms. Kelliher nor Mr. Binetter submitted a declaration. The Opposition's assertions that the Binetter Parties "have newer devices" and that a vendor protocol would be "overwhelmingly burdensome" are unsupported by any evidence. Opp. ¶ 9 & at 3.

The letter confirms the Motion. It reports that, during October 10 through 23, the Binetter Parties "continued running the full entity names listed in the subpoena across email" and uploaded "approximately 500 emails from Mr. Binetter's email account." Appleton Decl. Ex. A at 1. On October 13, the derivative terms had identified "roughly 113 potentially responsive emails and three text messages"; counsel is now reviewing approximately 600 documents. Dendinger Decl. Ex. G at 6; *Opp.* ¶ 7. The volume multiplied within weeks of the Binetter Parties' representation that they were "in compliance" because no responsive, non-privileged document had been found. *Id*. That is not a reliable process, and it belies the Opposition's suggestion that a "paucity of responsive documents" is "not surprising." Opp. ¶ 9.

That the Binetter Parties have begun running the derivative terms illustrates the problem rather than cures it. They began running those terms only after the Foreign Representative

uncovered the exact-name searches and supplied better terms. Those terms use wildcards and Boolean connectors, which the email, messaging, and social-media applications Ms. Kelliher is using to conduct searches may treat as literal characters or ignore. The Binetter Parties refuse to say how the terms are being executed. Dendinger Decl. Ex. G at 7. A vendor applying the terms consistently across all sources, with hit reports, is the most direct way to ensure they are run as written; at a minimum, the Binetter Parties should disclose how each term has been run in each application.

The letter also reports entity-name results only for the four Prior Foreign Debtors—none for the six New Foreign Debtors, whose assets are the predicate for this discovery and at least $1 million of whose funds Judge Bentley found were diverted to the Binetters or their companies. Appleton Decl. Ex. A at 1; *BCI II*, 668 B.R. at 55–56. Nor does it address the requests concerning unnamed entities, unidentified real property, and assets over $10,000. Mot. at 14–15.

### B. The Opposition Does Not Rebut the Authorities Requiring Counsel-Directed Collection and Transparency

The Opposition does not cite, much less distinguish, the decisions holding that custodians may not be left to collect and judge the responsiveness of their own documents. *See Grullon v. Lewis*, No. 24-CV-04892 (VEC)(SN), 2025 WL 1693425, at *1–*2 (S.D.N.Y. June 17, 2025) ("Counsel for the Defendants must conduct the searches"); *Herman v. City of New York*, 334 F.R.D. 377, 386 (E.D.N.Y. 2020); *Nat'l Day Laborer Org. Network v. U.S. Immig. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012); *Acon v. Long Island Gay & Lesbian Youth, Inc.*, No. 21-CV-4642 (WFK)(CLP), 2023 WL 12073648, at *2 n.6 (E.D.N.Y. July 7, 2023). The Binetter Parties' only response is that Olshan reviews whatever its clients upload. Opp. ¶ 44. That is the problem these decisions identify: counsel's review cannot cure a collection counsel does not

control. The Binetter Parties do not deny that they have barred counsel from searching the imaged data.

The assertion that counsel-conducted review would be "ethically improper" (Opp. ¶ 51) is unsupported and misdescribes the relief. Under the Proposed Order, the Binetter Parties' own counsel would review the vendor's collection, and only responsive, non-privileged documents would be produced, subject to the Protective Order. Mot. at 24. That is how *Grullon* directed compliance, and it is the process Olshan itself used for Michael Binetter, whose "devices were forensically imaged" and whose documents were "reviewed by a team of contract reviewers, overseen by Olshan attorneys." Dendinger Decl. Ex. D at 3; Opp. ¶ 47.

The Opposition also contends that forensic collection is available only as a sanction for spoliation. Opp. ¶¶ 39, 60. The Motion cited *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 118 (S.D.N.Y. 2008), to show that forensically sound collection is a recognized response when self-directed efforts fall short, and the Opposition ignores *In re Correra*, 589 B.R. 76, 84–85, 96–97 (Bankr. N.D. Tex. 2018), where forensic imaging in the Rule 2004 context uncovered documents a witness had said did not exist. Mot. at 18–19. The Opposition does not dispute that the May 2026 clones are not bit-stream images, lack hash verification, and are nearly six months stale. *Id.* at 18. Nor does it respond to the authorities supporting disclosure of search methodology. *Id.* at 19–21. That the Order does not require disclosure (Opp. ¶ 27) does not mean it forbids it.

Finally, no finding of bad faith is required. Opp. ¶ 39. The question is whether the integrity and pace of the asset trace should be left to the Binetter Parties. The Opposition does not address this Court's findings that the Binetters "have repeatedly sought to assert a Fifth Amendment 'act of production' privilege to avoid complying with subpoenas," Fifth Amendment Opinion, 681 B.R. at 27, and that the history of discovery disputes "suggests that these disputes may have been

interposed, at least in part, to cause delay and frustrate the asset tracing exercise of the Foreign Representative," Stay Opinion, 2026 WL 1895587, at *7. As Judge Bentley warned, "Statutes of limitation may have expired, and the investigative trail may have cooled." *BCI II*, 668 B.R. at 59. A process that depends on the Binetter Parties' own judgment, pace, and methods continues that delay.

## III. RULES 26 AND 45 SUPPORT, RATHER THAN BAR, THE REQUESTED RELIEF

*Rule 26(b)(2)(C).* The Opposition's reliance on Rule 26(b)(2)(C)(i) (Opp. ¶ 45) conflates two requests. The Foreign Representative has agreed to subpoena closed-account records from the banks directly and asks the Binetter Parties only to identify those banks. Mot. at 25. The Binetter Parties' own emails, messages, and files are not obtainable from any "other source."

*Burden.* The Binetter Parties offer no estimate of what a vendor collection would cost and no evidence of burden. Judge Bentley has already weighed this discovery's burden—"[a]t most, they might have to spend a few hundred thousand dollars"—and left room only for "a specific showing that particular requests are unduly burdensome." *BCI II*, 668 B.R. at 59–60. That he addressed whether discovery should proceed (Opp. ¶ 46) does not matter; the burden he weighed was the cost of providing it. And the resisting party bears "the burden of coming forward with evidence" of burden and expense. *In re Residential Capital, LLC*, 480 B.R. 529, 544 (Bankr. S.D.N.Y. 2012).

*Cost allocation.* Rule 45(d)(2)(B)(ii) protects a non-party from "significant expense," but "[p]rotection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance." *In re First Am. Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998) (internal quotation marks and citation omitted). The Opposition's only authority, *Doe v. Columbia Univ.*, No. 25-cv-02132 (DEH)(RFT), 2026 WL 1345937 (S.D.N.Y. May 13, 2026), involved a

non-party with an "indirect" interest that made a timely 76-page production and was reimbursed $7,155.88 after the fact. *Id.* at *1, *3–*5. The Binetter Parties, by contrast, are the subjects of the asset trace, "not parties who can claim to be innocent babes in the woods," *BCI II*, 668 B.R. at 56, and their years of non-production are why a vendor is needed.

*Mr. Binetter's health.* The Foreign Representative does not ask Mr. Binetter to do more than his health permits. Mot. at 6. The Opposition's description of what a vendor collection would demand of him (Opp. ¶ 50) is unsupported by evidence. A one-time collection requiring access credentials and limited cooperation would replace weekly manual searching by Ms. Kelliher, who has "her own responsibilities and health challenges." Opp. ¶ 10. The schedule is for the Court to set, Mot. at 25, and the Proposed Order can accommodate Mr. Binetter's treatment.[4]

## IV. THE REQUEST CONCERNING MICHAEL BINETTER IS LIMITED AND APPROPRIATE

The Opposition calls this request an effort to "reopen" Michael Binetter's discovery. Opp. ¶¶ 47–48, 60. It is not. The Foreign Representative asks only that counsel identify the search terms used and the sources searched—information a producing party ordinarily provides. Mot. at 26; *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 646 n.5 (S.D.N.Y. 2019). The Opposition says the only basis is Ms. Kelliher's early search terms (Opp. ¶ 48); that is the point. The question arose only after the Foreign Representative learned that Ms. Kelliher and Mr. Binetter had been searching only for the entities' full names and choosing their own sources. The same counsel handled both productions, and the Foreign Representative is entitled to know whether the same search approach was used for Michael Binetter—whose production, unlike theirs, will not have

[4] The Opposition also argues that the Binetter Parties are non-parties to whom Rule 45's protections apply. Opp. at 1–2. The Foreign Representative does not dispute that Rule 45 applies through Bankruptcy Rule 9016. But Rule 45 is the source of the Court's authority to direct the manner of compliance, Fed. R. Civ. P. 45(d)(2)(B)(i)–(ii), and the Binetter Parties' status as the subjects of the asset trace bears directly on the equities. *BCI II*, 668 B.R. at 53–56.

the benefit of the derivative terms. The information exists and can be provided with minimal effort, Opp. ¶ 47, and Michael Binetter, though not a party to the August 27 Order, remains subject to the Rule 2004 Order and his Subpoena.

## V. THE OPPOSITION'S NEW REQUESTS FOR FEES, SANCTIONS, AND DECLARATORY RELIEF SHOULD BE DENIED

The Opposition seeks fees, sanctions, declaratory relief, and restoration of the stay—relief no motion has placed before the Court. Opp. ¶¶ 53–61 & at 29. Each request should be denied.

*Rule 37(a)(5)(B).* That the Motion cites Rule 37 alongside Rule 45, Mot. at 1, does not entitle the Binetter Parties to Rule 37 expenses, Opp. ¶ 54. As non-parties, Opp. at 1–2, they are subject to Rule 45, made applicable by Bankruptcy Rule 9016, which "governs disclosure or discovery from a non-party by way of subpoena," *Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 7913 (AT), 2014 WL 594085, at *1 (S.D.N.Y. Feb. 11, 2014) (citations omitted). Courts in this Circuit decline to award Rule 37 expenses to non-party subpoena recipients. *See Data Collective II, L.P. v. Baron Cap. Mgmt. Inc.*, No. 25-MC-00057 (JAV), 2025 WL 1380122, at *3 (S.D.N.Y. May 13, 2025); *Mentus v. Gallina Dev. Corp.*, No. 6:25-CV-06122 (EAW) (CDH), 2025 WL 3088926, at *4 (W.D.N.Y. Nov. 5, 2025). In any event, no award may be made if "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). A motion is substantially justified if there is "a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Data Collective II*, 2025 WL 1380122, at *3 (cleaned up). There is at least a genuine dispute over paragraph 5. The Court said that the 3.5-hour figure was "not a requirement that I would have myself imposed," that "had I come up with the order, [it] would be unlimited," and that "what you are left with is motion practice." 10/6 Tr. at 19:20–23, 20:7–12. The Motion followed two months without a production,

and the Binetter Parties' counsel called a motion the Foreign Representative's "remedy." Dendinger Decl. Ex. G at 4. For the same reasons, an award would be unjust.

*Rule 45(d)(1).* Sanctions under Rule 45(d)(1) require a showing that "the challenged subpoena imposed an undue burden or expense" and, if so, that the subpoenaing party failed to take reasonable steps to avoid it. *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ), 2015 WL 13735434, at *3 (E.D.N.Y. Oct. 7, 2015). Neither is shown. The Subpoenas have already been enforced over the Binetter Parties' objections, and Judge Bentley found that "[t]he magnitude of these losses appears to be much greater than the magnitude of the burdens the Binetters will suffer by having to provide discovery." *BCI II*, 668 B.R. at 59. The Binetter Parties argue not that the Subpoenas are unduly burdensome, but that this Motion should not have been filed. That is no basis for Rule 45(d)(1) sanctions. *See Data Collective II*, 2025 WL 1380122, at *3–*4 (denying fees where there was "no argument presented that the subpoenas by their terms imposed an undue burden," and finding the motion justified where the respondent "had not completed its document production"). And the Foreign Representative moved only after the agreed process produced nothing for two months and his proposal to reach a revised agreement was rejected by the Binetter Parties "in full." Dendinger Decl. Ex. G at 1. *Doe* concerned reimbursement of vendor costs, not sanctions. 2026 WL 1345937, at *4–*5.

*Inherent power and § 1927.* Sanctions under either authority require "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997); *see Shafii v. British Airways*, *PLC*, 83 F.3d 566, 571 (2d Cir. 1996) (§ 1927 applies only to actions so meritless they must have been undertaken for an improper purpose). Neither prong is met. A substantially justified motion is not "entirely meritless," and there is no evidence of improper purpose: counsel

told the Court on October 6 that paragraph 5 is a "mechanic in the order to try and increase the 3.5 hours," 10/6 Tr. at 13:4–6, and this Motion invokes that mechanism. The Opposition's own authorities show how far this record is from sanctionable conduct: *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 135–36 (2d Cir. 2023), involved fabricated text messages, perjury, and spoliation, and *In re Emanuel*, 422 B.R. 453, 466 (Bankr. S.D.N.Y. 2010), a duplicative, forum-shopping motion. A single motion, invited by the Court and grounded in the governing order, does not "multipl[y] the proceedings." 28 U.S.C. § 1927. Any sanctions request also requires notice and an opportunity to be heard, *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996), *abrogated on other grounds by Lamie v. U.S. Tr.*, 540 U.S. 526 (2004), and should be made, if at all, by separate motion.

*Declaratory relief and restoration of the stay.* The requested declaration would add a cap the Order does not contain, contrary to counsel's own description of the commitment as "at least to start 3.5 hours per week." 8/26 Tr. at 6:5–6. And restoring the stay the Court vacated would extend a delay that, as this Court has recognized, risks "the cooling investigative trail and tens of millions in potential recoveries that may be lost." Stay Opinion, 2026 WL 1895587, at *7.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, the Foreign Representative respectfully requests that the Court (i) grant the Motion and enter the Proposed Order; (ii) deny the Binetter Parties' requests for fees, costs, sanctions, declaratory relief, and restoration of the stay; and (iii) grant such other and further relief as is just and proper.

Dated: New York, New York
October 30, 2026

Respectfully submitted,

ASHURST PERKINS COIE UK LLP

By: */s/ Mark Dendinger*

Mark Dendinger
mark.dendinger@ashurstperkins.com
55 Hudson Yards, 18th Floor
New York, New York 10001
Tel.: (212) 205-7029
Fax: (212) 409-8236

ASHURST PERKINS COIE US LLP
Shari A. Brandt
shari.brandt@ashurstperkins.com
Matthew M. Riccardi
matthew.riccardi@ashurstperkins.com
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Tel: (212) 262-6900
Fax: (212) 977-1649

*Counsel to John Sheahan, as Liquidator and Foreign Representative*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Bankruptcy Rule 9078-1, I hereby certify that, on October 30, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via CM/ECF.

*/s/ Mark Dendinger*
Mark Dendinger